
ELECTRONICALLY FILED
6/10/2020 1:03 PM
53-CV-2020-900018.00
CIRCUIT COURT OF
PERRY COUNTY, ALABAMA
MIA JACOBS-TURNER, CLERK

## IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA

| | |
|---|---|
| **CHRISTINE JACKSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **QUICKEN LOANS, INC., MORTGAGE** | ) |
| **ELECTRONIC REGISTRATION** | ) |
| **SYSTEMS, INC.** | )          **CIVIL ACTION NO. 2020-900018** |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

### NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that a Notice of Removal of the above-styled action from the Circuit Court of Perry County, Alabama to the United States District Court for the Southern District of Alabama, a copy of which is attached hereto, was duly filed on June 10, 2020, in the Office of the Clerk of the United States for the Southern District of Alabama.

Respectfully submitted on this the 10th day of June, 2020.

*/s/ G. Lane Knight*
One of the Attorneys for Quicken Loans Inc. and
Mortgage Electronic Registrations Systems, Inc.

**OF COUNSEL**:

G. Lane Knight (ASB-6748-I72K)
E-mail:  lknight@balch.com
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, Alabama 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

9033892.1

Ginny Willcox Leavens (ASB-4721-I65W)
E-mail:  gwillcox@balch.com
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

9033892.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following on this the 10th day of June, 2020, and by U.S. Mail postage paid:

Robert H. Turner
Turner and Turner
P.O. Box 929
Marion, AL 36756
(334) 683-4111
rturnersr@turnerandturner.lawyer

*Attorney for Plaintiff*

*/s/  G. Lane Knight*
Of Counsel

9033892.1

## IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA

| | |
|---|---|
| **CHRISTINE JACKSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **QUICKEN LOANS, INC., MORTGAGE** | ) |
| **ELECTRONIC REGISTRATION** | ) |
| **SYSTEMS, INC.** | )    **CIVIL ACTION NO. 2020-900018** |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTINE JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **QUICKEN LOANS, INC.,** | ) | |
| **MORTGAGE ELECTRONIC** | ) | **CASE NO:** |
| **SYSTEMS, INC., ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | **Formerly CV-2020-900018.00** |
| | ) | **In the Circuit Court of Perry** |
| | ) | **County, Alabama** |
| | ) | |
| | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446(a) and (b), Defendants

Quicken Loans Inc. ("Quicken Loans") and Mortgage Electronic Registration

Systems, Inc. ("MERS") (Quicken Loans and MERS together, the "Defendants")

submit their Notice of Removal of the proceeding entitled *Christine Jackson v.*

*Quicken Loans, Inc., et al.*, Case No. CV-2020-900018.00, pending in the Circuit

Court for Perry County, Alabama, to the United States District Court for the Southern District of Alabama, Northern Division.[1]

# I. INTRODUCTION AND PROCEDURAL REQUIREMENTS

## A. <u>The Complaint</u>

On April 30, 2020, Plaintiff Christine Jackson filed a Complaint against Quicken Loans and MERS entitled *Christine Jackson v. Quicken Loans, Inc., et al.*, Case No. CV-2020-900018.00 in the Circuit Court of Perry County, Alabama. In the Complaint, Plaintiff Christine Jackson claims, among other things, that Defendant MERS is "unlawfully encumbering plaintiffs' property" and brings claim arising out of alleged wrongdoing by the defendants in connection with plaintiff's home mortgage loan. Specifically, Plaintiff brings claims for: (1) breach of contract (2) fraudulent misrepresentation; (3) outrage; and (4) unjust enrichment. Plaintiff seeks punitive damages and emotional distress damages. The nature of this action is more fully stated in the Complaint, a copy of which is attached hereto within **Exhibit A**.[2]

## B. <u>All Defendants Join</u>

---

[1] Defendants specifically reserve any and all applicable defenses pursuant to Rule 12 of the Federal Rules of Civil Procedure, including, but not limited to, the defenses of insufficient process and insufficient service of process with respect to Quicken Loans, which does not appear to have been served at this time.

[2] Exhibit A contains all pleadings and papers filed in the Circuit Court.

All defendants join in the removal of this action. *See* 28 U.S.C. § 1446(b)(2)(A).

**C.     Venue is Proper.**  In accordance with 28 U.S.C. §§ 1391(a) and 1441(a), venue is proper in the United States District Court for the Southern District of Alabama, Northern Division, because, according to the Complaint, a substantial portion of the events giving rise to Plaintiff's claims occurred in Perry County, Alabama and because the property at issue in this matter is also located in Perry County, Alabama.  Pursuant to 28 U.S.C. § 1441(a) and (b), this case may be removed to the United States District Court for the Southern District of Alabama, Northern Division.

**D.     Removal is Timely.**  MERS, the first defendant to be served, was served with Plaintiff's Complaint on May 11, 2020.  *See* Ex. A. Thus, the filing of this Notice of Removal is within thirty (30) days of service of the Complaint. *See* 28 U.S.C. §1446(b)(1).

**E.     Copies of Process, Pleadings and Orders; Notice.**  In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders filed in this action are attached to this Notice of Removal as **Exhibit A**. Additionally, attached hereto as **Exhibit B** is a copy of the Notice of Filing of Notice Removal, without exhibits, that will be filed concurrently with the clerk of the Circuit Court of Perry County, Alabama. *See* 28 U.S.C. § 1446(d).

3

## II.   BASIS FOR REMOVAL –DIVERSITY JURISDICTION

### A.   <u>Removal is Proper Because Diversity Jurisdiction Exists</u>.

This Court is provided with original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because the matter is between citizens of different states.  *See* 28 U.S.C. § 1332(a); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.").

*1.   Diversity of Citizenship:*  Plaintiff is a resident and citizen of the State of Alabama.  Ex. A, Complaint, at ¶ 1.  A corporation is considered a citizen of every state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Flintlock Constr. Servs. v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013).   Quicken Loans is a Michigan corporation with its principal place of business in Michigan. MERS is a corporation organized under Delaware law with its principal place of business in Virginia. Thus, Quicken Loans and MERS are non-citizens of Alabama for jurisdictional purposes.  Accordingly, diversity of citizenship for purposes of the Court's jurisdiction of this proceeding pursuant to 28 U.S.C. § 1332 is satisfied, as no named defendant is citizen of the State of Alabama.  *See* 28 U.S.C. §§ 1332, 1441 (a), (b).

9022570.2

**2.   *Amount in Controversy:*** Plaintiff has not specified a monetary demand in the Complaint. Where an amount is not "clearly on the face of documents before the court," the amount in controversy requirement can be satisfied when the jurisdictional amount can be determined from the allegations of the Complaint and the documents submitted with the Notice of Removal. *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 121 (11th Cir. 2007). To ascertain the amount in controversy the Court may consider the Notice of Removal as well as any other evidence presented by defendant. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 756 (11th Cir. 2010).[3] The Court can use deduction, inference, or other extrapolation. *Id.* at 754. Defendants are "not required to prove the amount in controversy beyond all doubt or to banish any uncertainty about it." *Id.*

Here, based on the allegations in the Complaint and the evidence submitted by Defendants, the amount in controversy will more likely than not exceed $75,000.00.  Plaintiff is seeking unspecified monetary damages (including actual and compensatory damages, punitive damages, and mental anguish damages). *See generally*, Ex. A, Complaint.  But in addition, Plaintiff has placed the validity of a $102,600.00 mortgage (from Quicken Loans) and two debts owed to Marion Bank

---

[3] Where a complaint is removed under the first paragraph of 28 U.S.C. § 1446(b) (within thirty days of initial service), the *Pretka* decision is controlling and there is "no[] limit [on] the types of evidence that may be used to satisfy the preponderance of the evidence standard." *Pretka*, 608 F.3d at 755, 768.  Instead, removing defendants "may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal," including "their own affidavits, declarations, or other documentation."  *Id.*

and Trust ("Marion Bank") – in the amounts of $52,259.66 and 64,895.98 respectively – at issue.[4] True and correct copies of the Quicken Loans mortgage and the Marion Bank debts are attached as **Exhibits C, D, and E**, respectively.

For example, in Paragraph 11 of the Complaint Plaintiff claims that MERS is "unlawfully encumbering plaintiffs' property and that "Plaintiff is paying the Marion Bank note or notes, and Quicken note for ($102,600) without benefit to herself. . . ." *See* Ex. A, Complaint, ¶ 11; *see also id.* ¶ 19 ("As a proximate result of said fraud, plaintiff has unwanted debt, unwanted mortgages on the property, title to her property has been slandered …."). Thus, Plaintiff seeks to challenge or invalidate Quicken Loan's $102,600.00 mortgage on the property and/or have the Court award her damages in the amount of the "unwanted debt" that she allegedly incurred as a result of the $102,600.00 Quicken Loan's mortgage and the $57,026.38 Marion Bank debt. The debts at issue are over the threshold, as is the value of the property she claims Quicken has no mortgage on. The 2015 tax assessed value of the property at issue here is $91,500.00. *See* **Exhibit F**, Affidavit of Ginny Willcox Leavens, at ¶ 4, at Ex. G-1. An October 2017 appraisal places the value of the property at $114,000.00. ***See*** **Exhibit G.** Taken together with the punitive and emotional distress damages sought, and it is clear that the amount in controversy more likely than not exceeds $75,000.

---

[4] Both of the Marion Bank debts reference a $60,000 indenture made and entered into on May 21, 1999 by and between Plaintiff and Marion Bank, and secured by the subject property. A true and correct copy of this note is attached hereto as **Exhibit H**.

9022570.2

## IV.  CONCLUSION AND REQUESTED RELIEF

For the reasons described herein, Defendants respectfully request this Court to proceed with this matter as if it had been originally filed in this Court and that this Court grant Defendants such other relief to which they are justly entitled.

Respectfully submitted on this the 10th day of June, 2020.

*/s/ G. Lane Knight*
One of the Attorneys for Quicken Loans Inc. and Mortgage Electronic Registration Systems, Inc.

**OF COUNSEL**:

G. Lane Knight (ASB-6748-I72K)
E-mail:  lknight@balch.com
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, Alabama 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

Ginny Willcox Leavens (ASB-4721-I65W)
E-mail:  gwillcox@balch.com
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2020, the foregoing has been electronically

filed utilizing the Court's CM/ECF System, as well as served via United States

Mail, postage prepaid and properly addressed to the following counsel of record:

Robert H. Turner
Turner and Turner
P.O. Box 929
Marion, AL 36756
(334) 683-4111
rturnersr@turnerandturner.lawyer

*Attorney for Plaintiff*

> /s/ G. Lane Knight
> Of Counsel

# EXHIBIT A

ELECTRONICALLY FILED
4/30/2020 5:01 PM
53-CV-2020-900018.00
CIRCUIT COURT OF
PERRY COUNTY, ALABAMA
MIA JACOBS-TURNER, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93 Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number:<br>53-CV-2020-900018.00<br><br>Date of Filing:<br>04/30/2020 | Judge Code: |

## GENERAL INFORMATION

**IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA**
**CHRISTINE JACKSON MS. v. QUICKEN LOANS ET AL**

**First Plaintiff:** ☐ Business ☑ Individual    **First Defendant:** ☑ Business ☐ Individual
☐ Government ☐ Other                  ☐ Government ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☑ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ EPFA - Elder Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:** F ☑ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER
        R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO    **Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
TUR016        4/30/2020 5:01:21 PM        /s/ ROBERT HENRY TURNER SR.
                       Date                Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☐ NO ☑ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:** ☐ YES ☑ NO

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>53-CV-2020-900018.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA
## CHRISTINE JACKSON MS. V. QUICKEN LOANS ET AL

**NOTICE TO:** QUICKEN LOANS, 1050 WOODWARD AVENUE, DETROIT, MI 48226

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), ROBERT HENRY TURNER SR.

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: POST OFFICE BOX 929, MARION, AL 36756

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of CHRISTINE JACKSON MS. pursuant to the Alabama Rules of the Civil Procedure.

*(Name(s))*

| 04/30/2020 | /s/ MIA JACOBS-TURNER | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.     /s/ ROBERT HENRY TURNER SR.

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*      *(Name of County)*

Alabama on _____ .

*(Date)*

_____     _____     *(Address of Server)*

*(Type of Process Server)*     *(Server's Signature)*

_____

*(Server's Printed Name)*     *(Phone Number of Server)*

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>53-CV-2020-900018.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA
### CHRISTINE JACKSON MS. V. QUICKEN LOANS ET AL

**NOTICE TO:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., P. O. BOX 2026, FLINT, MI 48501

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), ROBERT HENRY TURNER SR.

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: POST OFFICE BOX 929, MARION, AL 36756

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of CHRISTINE JACKSON MS. pursuant to the Alabama Rules of the Civil Procedure.

*(Name(s))*

| 04/30/2020 | /s/ MIA JACOBS-TURNER | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.      /s/ ROBERT HENRY TURNER SR.

*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____.

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*      *(Name of County)*

Alabama on _____.

*(Date)*

_____      *(Address of Server)*

_____      _____

*(Type of Process Server)*      *(Server's Signature)*      _____

_____      *(Phone Number of Server)*

*(Server's Printed Name)*

DOCUMENT 21

ELECTRONICALLY FILED
4/30/2020 5:01 PM
53-CV-2020-900018.00
CIRCUIT COURT OF
PERRY COUNTY, ALABAMA
MIA JACOBS-TURNER, CLERK



# IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA
## CIVIL DIVISION

| | |
|---|---|
| **Christine Jackson,** | {} |
| | {} |
| **Plaintiff,** | {} |
| | {} **Case No.:** _____ |
| **vs.** | {} |
| | {} |
| **Quicken Loans, Inc., Mortgage** | {} |
| **Electronic Registration Systems, Inc. and** | {} |
| **xyz Corporation, a fictitious entity whose** | {} |
| **real name is unknown at the present, but** | {} |
| **will be added by amendment when** | {} |
| **ascertained, but meaning the entity,** | {} |
| **organization bank or lending institution** | {} |
| **that entered into a contractual/loan** | {} |
| **agreement with plaintiff on or about** | {} |
| **January 5, 2018.** | {} |
| | {} |
| **Defendants.** | {} |

## **COMPLAINT**

**Comes now** the plaintiff in the above-styled matter and makes the following allegations

against the defendants **Quicken Loans, Inc., Mortgage Electronic Registration Systems, Inc.**

**and xyz Corporation, a fictitious entity whose real name is unknown at the present, but**

**will be added by amendment when ascertained, but meaning the entity, organization bank**

**or lending institution that entered into a contractual/loan agreement with plaintiff on or**

**about January 5, 2018**, to-wit:

### **Statement Of Facts**

(1)  Plaintiff is resident of Perry County, Alabama.

(2)  She resides at and owns the property located at 505 East Street, Marion, Alabama;

betterdescribed as:

Lot No. 22, according to the plat of the Cloverdale Subdivision, recorded
in the Probate Office of Perry County, Alabama at Deed Book 361, page
9, having a deed source of DB 555, page 741.

(3) Prior to January 5, 2018, plaintiff's property was subject to a mortgage held by

Marion Bank & Trust Company.

(4) Plaintiff in search of a better interest rate researched the market and began negotiations

with Defendant Quicken Loans, Inc.

(5) Plaintiff and Defendant were able to agree that Defendants Quicken Loan, Inc. and

"MERS, Inc." would take a mortgage on plaintiff's residence in the amount of one

hundred two thousand six hundred and ($102,600.00) 00/100 dollars. The parties

further agreed that defendants would satisfy plaintiff's mortgage at Marion Bank and

Trust Company, and that defendant "MERS" would hold the first mortgagee.

(6) Defendants through its agents and assigns performed its due diligence and satisfied

themselves that the pay-off at the Marion Bank and Trust Company was fifty-seven

thousand twenty-six and ($57,026.38) 38/100 dollars.

(7) Defendants through their agents and assigns, and fictitious parties xyz, forwarded a

check to Marion Bank and Trust Company, in that amount, only to be told that

plaintiff had two mortgages and that the amount forwarded was not sufficient to

satisfy the two loans.

(8) Marion Bank and Trust Company returned the $57,026.38 to defendants, but

defendants continued to collect on the notes and mortgages held by them.

(9) Defendant Quicken Loan received and retained the ($57,026.38) but would not reduce

the amount owed it by plaintiff nor give plaintiff a credit or set-off for the returned $57,026.38.

Defendant "MERS" continued to hold the mortgage on plaintiff's home as well.

(10) Defendants are holding ($57,026.38) property of the plaintiff and charging plaintiff interest, and accepting payments for monies from which plaintiff is receiving no benefit.

(11)  Currently, plaintiff is paying the Marion Bank note or Notes, and "Quicken" note for ($102,600.00) without any benefit to herself and Defendant "MERS" is unlawfully encumbering plaintiffs' property.

### Count I – Breach of Contract

(12)  Plaintiff contracted with defendant Quicken Loan:  that in exchange for a mortgage on the home she would receive the use and benefit of ($102,600.00) and the elimination of the mortgage debt to Marion Bank and Trust in the amount of ($57,026.38). Defendant breached the agreement by unlawfully withholding from plaintiff the use and benefit of ($57,026.38) while demanding full payment for the ($102,600.00). Defendant "MERS, Inc." breached the contract by unlawfully encumbering plaintiff's property for an amount far greater than the benefit received.

As a proximate result of these breaches, plaintiff's title is slandered, she lost the value of the contract she negotiated, she has unwanted debt, and she has suffered mental anguish and emotional distress.

Wherefore, plaintiff demands of the defendants separately and severally in the form of a judgment an amount to be set by a struck jury.

### Count II – Fraudulent Misrepresentation

(13)  Plaintiff incorporates by reference the "Statement of Facts".

(14)  Defendants represented to plaintiff that they were knowledgeable and experts in the loan business and that their actions would reduce plaintiff's financial burden and

leave her with a surplus of funds and a diminished financial obligation.

(15)  Defendants represented to plaintiff that they had researched the title to her home and that her obligation to pay Marion Bank would be satisfied, and that she would be provided additional funding for her discretionary use.

(16)  Defendants represented to plaintiff that they were knowledgeable and experts in the refinancing business and understood the import of "open-end mortgages with future advance clauses", when in fact they did not. This caused rejection by Marion Bank of the attempted pay-off and left plaintiff with two mortgage payments and two recorded mortgages in the Probate records of Perry County, Alabama.

(17)  Defendants representations were false and defendant knew they were false or defendant without knowledge of the true facts recklessly misrepresented the facts with the intent that plaintiff rely on them.

(18)  Plaintiff believed the representations and relied on them and acted upon them to her detriment.

(19)  As a proximate result of said fraud, plaintiff has unwanted debt, unwanted mortgages on the property, title to her property has been slandered, and she has suffered humiliation, emotional distress, and mental anguish.

Wherefore, plaintiff demands judgment of these defendants separately and severally in the form of a judgment amount to be set by a struck jury.

## Count III - Outrage

(20)  Plaintiff adopts by reference the information contained in the Statement of Facts and alleges further.

(21)  Defendants intentionally or recklessly caused plaintiff to suffer emotional distress

by its predatory lending practices.

(22)  Defendant's actions toward plaintiff were so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and are atrocious and utterly intolerable in a civilized society.

(23)  The emotional distress that Defendants caused plaintiff to suffer was so severe that no reasonable person could be expected to endure.

(24)  The plaintiff claims punitive damage of the defendant.

Wherefore, plaintiff claims of the defendants separately and severally in the form of a judgment an amount to be set by a struck jury.

## Count IV – Unjust Enrichment

(25)  Plaintiff incorporates by reference the averments contained in the State of Facts and alleges further that:

(a)  Defendants are receiving interest and principal over and beyond the amounts contracted for.

(b)  Defendants have unilaterally charged interest on monies still in their possession.

(c)  Defendants have unilaterally modified the contract between the parties and changed the amortization schedules.

(d)  Defendants are reaping the benefits of a loan greater than One hundred fifty-seven thousand dollars ($157,000.00) and the interest thereon while lending only One hundred ix thousand ($106,000.00).

(e)  Plaintiff on the other hand is paying for money not received, or that is benefiting her in no way.

(26)  Plaintiff is entitled to punitive damages because of the willful, intentional an oppressive conduct of the defendants.

As a proximate result of defendants' actions she has lost the benefit of the value of the contract she negotiated, she has unwanted debt, and she has suffered mental anguish and emotional distress.

Wherefore, plaintiff demands of the defendants separately and severally in the form of a judgment an amount to be set by a struck jury.

Respectfully submitted,

/s/ Robert H. Turner, Sr.
Robert H. Turner, Sr. (TUR-016)
Attorney for Plaintiff
TURNER and TURNER
P.O. Box 929
Marion, AL 36756
(334) 683-4111
(334) 683-4180 (facsimile)
rturnersr@turnerandturner.lawyer

**PLANTIFF DEMANDS TRIAL BY A STRUCK JURY**





AlaFile E-Notice

53-CV-2020-900018.00

To: ROBERT HENRY TURNER SR.
rturneratty@bellsouth.net

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA

CHRISTINE JACKSON MS. V. QUICKEN LOANS ET AL
53-CV-2020-900018.00

The following complaint was FILED on 4/30/2020 5:01:21 PM

Notice Date:     4/30/2020 5:01:21 PM

MIA JACOBS-TURNER
CIRCUIT COURT CLERK
PERRY COUNTY, ALABAMA
P.O. BOX 505
MARION, AL, 36756

334-683-6106
mia.turner@alacourt.gov

**USPS CERTIFIED MAIL**

9214 8901 7301 4153 2000 0008 55

P.O. BOX 505
MARION, AL, 36756

**53-CV-2020-900018.00**

To:  QUICKEN LOANS
     1050 WOODWARD AVENUE
     DETROIT, MI 48226

# NOTICE OF ELECTRONIC FILING

**IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA**

**CHRISTINE JACKSON MS. V. QUICKEN LOANS ET AL**
**53-CV-2020-900018.00**

The following complaint was FILED on 4/30/2020 5:01:21 PM

Notice Date:     4/30/2020 5:01:21 PM

**MIA JACOBS-TURNER**
**CIRCUIT COURT CLERK**
PERRY COUNTY, ALABAMA
P.O. BOX 505
MARION, AL 36756

334-683-6106
mia.turner@alacourt.gov

Case 2:20-cv-00318-MHT-JTA Document 1 Filed 06/06/20 Page 25 of 107 PageID #: 129

*P.O. BOX 505*
*MARION, AL, 36756*

**USPS CERTIFIED MAIL**

9214 8901 7301 4153 2000 0008 62

**53-CV-2020-900018.00**

To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
P. O. BOX 2026
FLINT, MI 48501

---

# NOTICE OF ELECTRONIC FILING

---

**IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA**

**CHRISTINE JACKSON MS. V. QUICKEN LOANS ET AL**
**53-CV-2020-900018.00**

The following complaint was FILED on 4/30/2020 5:01:21 PM

Notice Date:     4/30/2020 5:01:21 PM

**MIA JACOBS-TURNER**
**CIRCUIT COURT CLERK**
PERRY COUNTY, ALABAMA
P.O. BOX 505
MARION, AL 36756

334-683-6106
mia.turner@alacourt.gov

DOCUMENT 3

ELECTRONICALLY FILED
4/30/2020 5:01 PM
53-CV-2020-900018.00
CIRCUIT COURT OF
PERRY COUNTY, ALABAMA
MIA JACOBS-TURNER, CLERK

## IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA
## CIVIL DIVISION

| | | |
|---|---|---|
| **Christine Jackson,** | {} | |
| | {} | |
| **Plaintiff,** | {} | |
| | {} | **Case No.:** _____ |
| **vs.** | {} | |
| | {} | |
| **Quicken Loans, Inc., et, al., etc.** | {} | |
| | {} | |
| **Defendants.** | {} | |

### <u>MOTION TO PRODUCE</u>

Comes now the Plaintiff and request that defendants Quicken Loans, Inc. and Mortgage

Electronic Registration Systems, Inc. produce for copying and inspection in the time and manner

prescribed by the Alabama Rules of Civil Procedure; to Attorney Robert H. Turner, Sr. At 417

Washington Street, Marion, Alabama the following documents and things:

(1) Your organizational documents i.e., articles of incorporation, partnership agreements,

and/or authorizations to do business in the State of Alabama.

(2) The location(s) of your usual places of business.

(3) Any and all documents which will illustrate or explain the business relationship

between Quicken Loans, Inc., and Mortgage Electronic Registration Systems, Inc., to

include any memorandums of understanding.

(4) The deed book and page numbers of all mortgages held by citizens of Perry County,

Alabama wherein defendant Quicken Loan, Inc. is the originator and "MERS", Inc.

holds the mortgage.

(5) Any and all documents which explain, show or tend to indicate the method or formula

used to apportion the loan payments of plaintiff between defendants Quicken Loan,

Inc. and "MERS", Inc.

(6) Any and all documents which explain, show or tend to indicate the method or formula used to apportion payments made to defendants Quicken Loan, Inc. and MERS, Inc. received from all other citizens of Perry County, Alabama whose records are recorded in the Perry County Probate office.

(7) The name and address of any party not listed as a defendant who participated in the origination, solicitation, funding, approval, witnessing, or negotiation of the loan and/or loan documents as respect to plaintiff Christine Jackson.

(8) All documents in your possession that show or illustrate, deception or misleading information that caused you to complete a loan to plaintiff received from plaintiff Christine Jackson.

(9) The name and address of the person or entity who accepts/receives or process payments made by plaintiff to you.

(10) The entire closing packet to include HUD-1, disclosures, amortization schedules origination fees, and disbursement of funds in connection with the loan to plaintiff.

(11) Any and all written, telephonic, texted or e-mailed correspondence by and between you and plaintiff Christine Jackson between November 1, 2017 to present, and

(12) The names and addresses of all persons contacted and requested to comment on the credit history, or financial ability to pay regarding plaintiff.

Respectfully submitted,

/s/ Robert H. Turner, Sr.
Robert H. Turner, Sr. (TUR-016)
Attorney for Plaintiff
TURNER and TURNER
P.O. Box 929
Marion, AL 36756

(334) 683-4111
(334) 683-4180 (facsimile)
rturnersr@turnerandturner.lawyer

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 30th day of April, 2020, electronically filed the notice of the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to the appropriate counsel, or alternatively, the same served via by U.S. Mail, postage prepaid, properly addressed.

*/s/ Robert H. Turner, Sr.*
Robert H. Turner, Sr.

DOCUMENT 14

ELECTRONICALLY FILED
4/30/2020 5:01 PM
53-CV-2020-900018.00
CIRCUIT COURT OF
PERRY COUNTY, ALABAMA
MIA JACOBS-TURNER, CLERK

## IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA
## CIVIL DIVISION

| | | |
|---|---|---|
| Christine Jackson, | {} | |
| | {} | |
| **Plaintiff,** | {} | |
| | {} | **Case No.:** _____ |
| **vs.** | {} | |
| | {} | |
| Quicken Loans, Inc., et, al., etc. | {} | |
| | {} | |
| **Defendants.** | {} | |

## <u>MOTION TO PRODUCE</u>

Comes now the Plaintiff and request that defendants Quicken Loans, Inc. and Mortgage Electronic Registration Systems, Inc. produce for copying and inspection in the time and manner prescribed by the Alabama Rules of Civil Procedure; to Attorney Robert H. Turner, Sr. At 417 Washington Street, Marion, Alabama the following documents and things:

(1) Your organizational documents i.e., articles of incorporation, partnership agreements, and/or authorizations to do business in the State of Alabama.

(2) The location(s) of your usual places of business.

(3) Any and all documents which will illustrate or explain the business relationship between Quicken Loans, Inc., and Mortgage Electronic Registration Systems, Inc., to include any memorandums of understanding.

(4) The deed book and page numbers of all mortgages held by citizens of Perry County, Alabama wherein defendant Quicken Loan, Inc. is the originator and "MERS", Inc. holds the mortgage.

(5) Any and all documents which explain, show or tend to indicate the method or formula used to apportion the loan payments of plaintiff between defendants Quicken Loan,

Inc. and "MERS", Inc.

(6) Any and all documents which explain, show or tend to indicate the method or formula used to apportion payments made to defendants Quicken Loan, Inc. and MERS, Inc. received from all other citizens of Perry County, Alabama whose records are recorded in the Perry County Probate office.

(7) The name and address of any party not listed as a defendant who participated in the origination, solicitation, funding, approval, witnessing, or negotiation of the loan and/or loan documents as respect to plaintiff Christine Jackson.

(8) All documents in your possession that show or illustrate, deception or misleading information that caused you to complete a loan to plaintiff received from plaintiff Christine Jackson.

(9) The name and address of the person or entity who accepts/receives or process payments made by plaintiff to you.

(10) The entire closing packet to include HUD-1, disclosures, amortization schedules origination fees, and disbursement of funds in connection with the loan to plaintiff.

(11) Any and all written, telephonic, texted or e-mailed correspondence by and between you and plaintiff Christine Jackson between November 1, 2017 to present, and

(12) The names and addresses of all persons contacted and requested to comment on the credit history, or financial ability to pay regarding plaintiff.

Respectfully submitted,

/s/ Robert H. Turner, Sr.
Robert H. Turner, Sr. (TUR-016)
Attorney for Plaintiff
TURNER and TURNER
P.O. Box 929
Marion, AL 36756

(334) 683-4111
(334) 683-4180 (facsimile)
rturnersr@turnerandturner.lawyer

### CERTIFICATE OF SERVICE

I hereby certify that I have on this the 30th day of April, 2020, electronically filed the notice of the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to the appropriate counsel, or alternatively, the same served via by U.S. Mail, postage prepaid, properly addressed.

*/s/ Robert H. Turner, Sr.*
Robert H. Turner, Sr.

CV-20-900018

**MARION**
306 PICKENS ST
MARION, AL 36756-9998
015340-0756
(800)275-8777
05/04/2020 02:13 PM

Duplicate

| Product | Qty | Unit Price | Price |
|---------|-----|------------|-------|
| Prepaid Mail | | | $0.00 |

(Weight:0 lbs. 2.80 oz.)
(Destination:FLINT, MI 48501)
(Acceptance Date:05/04/2020  14:13:02)
(USPS Tracking #)
(9214890173014153200000000862)

| Total: | | | $0.00 |

Preview your Mail
Track your Packages
Sign up for FREE @
www.informeddelivery.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

HELP US SERVE YOU BETTER

TELL US ABOUT YOUR RECENT
POSTAL EXPERIENCE

Go to:
https://postalexperience.com/Pos

840-5350-0571-001-00020-75627-01

or scan this code with
your mobile device:



or call 1-800-410-7420.

YOUR OPINION COUNTS

Receipt #: 840-53500571-1-2075627-1
Clerk: 11

DOCUMENT 81

CV-20-900018

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Prepaid Mail | | | $0.00 |

    (Weight:0 lbs.  2.80 oz.)
    (Destination:DETROIT, MI 48226)
    (Acceptance Date:05/04/2020  14:15:52)
    (USPS Tracking #)
    (9214890173014153200000000855)

Total:                                    $0.00

            Preview your Mail
            Track your Packages
            Sign up for FREE @
        www.informeddelivery.com

All sales final on stamps and postage.
 Refunds for guaranteed services only.
       Thank you for your business.

      HELP US SERVE YOU BETTER.

      TELL US ABOUT YOUR RECENT
          POSTAL EXPERIENCE

              Go to:
     https://postalexperience.com/Pos

     840-5350-0571-001-00020-75639-02

        or scan this code with
         your mobile device:



        or call 1-800-410-7420.

        YOUR OPINION COUNTS

**DOCUMENT 4**

**UNITED STATES POSTAL SERVICE**

May 11, 2020

Dear Circuit Clerk:

| UJS Information | |
|---|---|
| Case Number: 53-CV-2020-900018.00 | Intended Recipient: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, |
| Document Type: Complaint | P. O. BOX 2026 |
| Restricted Delivery Requested: No | FLINT, MI 48501 |

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 7301 4153 2000 0008 62**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | May 11, 2020, 11:02 am |
| **Location:** | FLINT, MI 48502 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

## Shipment Details

| | |
|---|---|
| **Weight:** | 3.0oz |

## Recipient Signature

Signature of Recipient:

Address of Recipient:  B - 2026

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

Case 2:20-cv-00918-MHH Document 3 Filed 06/06/20 Page 35 of 107 PageID #: 139



AlaFile E-Notice

53-CV-2020-900018.00

Judge: COLLINS PETTAWAY, JR.

To: TURNER ROBERT HENRY
rturneratty@bellsouth.net

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA

CHRISTINE JACKSON MS. V. QUICKEN LOANS ET AL
53-CV-2020-900018.00

The following matter was served on 5/11/2020

**D002 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

**Corresponding To**

CERTIFIED MAIL

ELECTRONIC CERTIFIED MAIL RETURN

MIA JACOBS-TURNER
CIRCUIT COURT CLERK
PERRY COUNTY, ALABAMA
P.O. BOX 505
MARION, AL, 36756

334-683-6106
mia.turner@alacourt.gov



AlaFile E-Notice

53-CV-2020-900018.00

Judge: COLLINS PETTAWAY, JR.

To: QUICKEN LOANS (PRO SE)
1050 WOODWARD AVENUE
DETROIT, MI, 48226-0000

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA

CHRISTINE JACKSON MS. V. QUICKEN LOANS ET AL
53-CV-2020-900018.00

The following matter was served on 5/11/2020

**D002 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**Corresponding To**
CERTIFIED MAIL

ELECTRONIC CERTIFIED MAIL RETURN

MIA JACOBS-TURNER
CIRCUIT COURT CLERK
PERRY COUNTY, ALABAMA
P.O. BOX 505
MARION, AL, 36756

334-683-6106
mia.turner@alacourt.gov



AlaFile E-Notice

53-CV-2020-900018.00

Judge: COLLINS PETTAWAY, JR.

To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (PRC
P. O. BOX 2026
FLINT, MI, 48501-0000

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA

CHRISTINE JACKSON MS. V. QUICKEN LOANS ET AL
53-CV-2020-900018.00

The following matter was served on 5/11/2020

**D002 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

**Corresponding To**

CERTIFIED MAIL

ELECTRONIC CERTIFIED MAIL RETURN

MIA JACOBS-TURNER
CIRCUIT COURT CLERK
PERRY COUNTY, ALABAMA
P.O. BOX 505
MARION, AL, 36756

334-683-6106
mia.turner@alacourt.gov

# EXHIBIT B

# IN THE CIRCUIT COURT OF PERRY COUNTY, ALABAMA

|  |  |  |
|---|---|---|
| **CHRISTINE JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **QUICKEN LOANS, INC., MORTGAGE** | ) | |
| **ELECTRONIC REGISTRATION** | ) | |
| **SYSTEMS, INC.** | ) | **CIVIL ACTION NO. 2020-900018** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that a Notice of Removal of the above-styled action from the

Circuit Court of Perry County, Alabama to the United States District Court for the Southern

District of Alabama, a copy of which is attached hereto, was duly filed on June 10, 2020, in the

Office of the Clerk of the United States for the Southern District of Alabama.

Respectfully submitted on this the 10th day of June, 2020.

                                         /s/ G. Lane Knight
                                         One of the Attorneys for Quicken Loans Inc. and
                                         Mortgage Electronic Registrations Systems, Inc.

**OF COUNSEL**:

G. Lane Knight (ASB-6748-I72K)
E-mail:  lknight@balch.com
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, Alabama 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

Ginny Willcox Leavens (ASB-4721-I65W)
E-mail: gwillcox@balch.com
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

9033892.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using

the AlaFile system which will send notification of such filing to the following on this the 10th day

of June, 2020:

Robert H. Turner
Turner and Turner
P.O. Box 929
Marion, AL 36756
(334) 683-4111
rturnersr@turnerandturner.lawyer

*Attorney for Plaintiff*

<u>/s/ G. Lane Knight</u>
Of Counsel

3

9033892.1

# EXHIBIT C

Return To:
Document Management
Quicken Loans Inc.
1050 Woodward Ave
Detroit, MI 48226-1906

When Recorded Return To:
Indecomm Global Services
As Recording Agent Only
1260 Energy Lane
St. Paul, MN 55108

Recorded  MORT      626    219
In Above Book and Page
01/22/2018 10:55:07 AM
Eldora B. Anderson
Judge of Probate
Perry

## DOCUMENT 11

80958232
63803854 · 4381885

[Space Above This Line For Recording Data]

## MORTGAGE

Mortgage Tax       153.90
Recording Fee       68.00
TOTAL              221.90
3388007286

MIN 100039033880072867
VA Case Number: 22-2260713348

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated January 5, 2018 , together with all Riders to this document.

(B) "Borrower" is Christine Jackson, an unmarried woman

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**ALABAMA**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3001 1/01
4150592452

VMP ®-6A(AL) (1302).00

Page 1 of 16      Initials:

VMP Mortgage Solutions, Inc.

q03388007286 0233 489 0115

**(D) "Lender"** is Quicken Loans Inc.

Lender is a Corporation
organized and existing under the laws of                the State of Michigan
Lender's address is 1050 Woodward Ave. Detroit, MI  48226-1906

**(E) "Note"** means the promissory note signed by Borrower and dated        January 5, 2018
The Note states that Borrower owes Lender One Hundred Two Thousand Six Hundred
and 00/100                                DOCUMENT 11                                Dollars
(U.S. $ 102,600.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than        February 1, 2033

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☒ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Legal Attached |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**ALABAMA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

VMP ®-6A(AL) (1302).00                Page 2 of 15                Initials: ___                **Form 3001 1/01**

q03388007286 0233 489 0215

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
County      of      Perry      :
[Type of Recording Jurisdiction]    . DOCUMENT 11    [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number:     53 14 03 07 4 003 020.000 0     which currently has the address of
505 East St                                                        [Street]
                   Marion                [City] , Alabama 36756-2611    [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(AL) (1302).00      Page 3 of 15      Initials: _____      Form 3001 1/01

q03388007286 0233 489 0315

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

**ALABAMA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

-6A(AL) (1302).00                    Page 4 of 16        Initials: _____        **Form 3001 1/01**

q03388007286 0233 489 0415

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

**ALABAMA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

VMP ®-6A(AL) (1302).00          Page 6 of 15          Initials: _____          Form 3001 1/01

q03388007286 0233 489 0615

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

ALABAMA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

-6A(AL) (1302).00                    Page 7 of 15          Initials: _____          Form 3001 1/01

q03388007286 0233 489 0715

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.                                          DOCUMENT 11

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

-6A(AL) (1302).00          •          Page 8 of 15          Initials:          Form 3001 1/01

q03388007286 0233 489 0815

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

ALABAMA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

-6A(AL) (1302).00      Page 9 of 15      Initials: _____      Form 3001 1/01

q03388007286 0233 489 0915

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**ALABAMA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

-6A(AL) (1302).00                    Page 10 of 15          Initials:          Form 3001 1/01

q03388007286 0233 489 1015

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

**ALABAMA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

VMP® -6A(AL) (1302).00              Page 11 of 15          Initials: _____          Form 3001 1/01

q03388007286 0233 489 1115

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**ALABAMA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

 -6A(AL) (1302).00    Page 12 of 15    Initials:    Form 3001 1/01

q03388007286 0233 489 1215

MORT 626 231

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in Perry County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP® -6A(AL) (1302) 00                Page 13 of 15        Initials: ___        Form 3001 1/01

q03388007286 0233 489 1315

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

626    232

Witnesses:

_____     DOCUMENT  01/05/2018 (Seal)
                                     Christine Jackson                    -Borrower

_____     _____ (Seal)
                                                                          -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                                         -Borrower

**ALABAMA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP ®-6A(AL) (1302).00                    Page 14 of 15                    Form 3001 1/01

q03388007286 0233 489 1415

MORT    626    233

STATE OF ALABAMA, Perry                                      County ss:

On this        5th        day of        January, 2018        , I,
Tammy N. Scott
a Notary Public in and for said county and in said state, hereby certify that Christine Jackson,
an unmarried woman


DOCUMENT 11


whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged
before me that, being informed of the contents of the conveyance, he/she/they executed the same
voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this        5th        day of        January, 2018        .

My Commission Expires:
10|7|2020

_Tammy N. Scott_
Notary Public    Tammy . N  Scott

TAMMY N. SCOTT
Notary Public, State of Alabama
Alabama State At Large
My Commission Expires
October 07, 2020


Prepared By:    Shamika C Houston
                Closing Care Rep
                1050 Woodward Ave
                Detroit, MI 48226-1906
                (313)373-0000
Loan origination organization  Quicken Loans Inc.
NMLS ID  3030
Loan originator  Daylan J Decker
NMLS ID  1295242


ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(AL) (1302).00              Page 15 of 15       Initials:          Form 3001 1/01

q03388007286 0233 489 1515

MERS MIN: 100039033880072867                                3388007286

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

VA Case Number: 22-2260713348  DOCUMENT 11

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this          5th   day of
          January, 2018          , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security
Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to
secure Borrower's Note to   Quicken Loans Inc.

(herein "Lender") and covering the Property described in the Security Instrument and located
at

505 East St
Marion, AL 36756-2611
[Property Address]

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States
Code, such Title and Regulations issued thereunder and in effect on the date hereof shall
govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security
Instrument or other instruments executed in connection with said indebtedness which are
inconsistent with said Title or Regulations, including, but not limited to, the provision for
payment of any sum in connection with prepayment of the secured indebtedness and the
provision that the Lender may accelerate payment of the secured indebtedness pursuant to
Covenant 18 of the Security Instrument, are hereby amended or negated to the extent
necessary to conform such instruments to said Title or Regulations.

**MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER**
4150592457
Wolters Kluwer Financial Services
VMP ®-538R (0405).01        **10/03**
Page 1 of 3        Initials:

q03388007286 0125 490 0103

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

    (a) ASSUMPTION FUNDING FEE A fee equal to
(           0.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

    (b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

    (c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.



q03388007286 0125 490 0203

VMP ®-538R (0405).01         Page 2 of 3

Initials:

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption
Policy Rider.                    DOCUMENT 11

_____  01/05/2018    /_____
Christine Jackson              -Borrower                              -Borrower


_____        _____
                               -Borrower                              -Borrower


_____        _____
                               -Borrower                              -Borrower


_____        _____
                               -Borrower                              -Borrower


VMP ®-538R (0405).01          Page 3 of 3

q03388007286 0125 536 0303

MORT    626    237

DOCUMENT 11

## EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 53 14 03 07 4 003 020.000 0

Land situated in the City of Marion in the County of Perry in the State of AL

Lot No. 22, according to the Plat of the Cloverdale Subdivision, recorded in the Probate Office of Perry County, Alabama, in Book 361 at Page 9, and being the same property conveyed by E. J. Blackburn and wife, Elizabeth A. Blackburn to Joseph R. Pearce by deed dated July 27, 1964, and recorded in the Probate Office of Perry County, Alabama, in Book 409, Page 143 reference to which deed is hereby made for a more particular description of the property conveyed.

Source of Title: Deed Book 555, Page 741.

Commonly known as:   505 East St, Marion, AL 36756-2611

THE PROPERTY ADDRESS AND TAX PARCEL IDENTIFICATION NUMBER LISTED ARE PROVIDED SOLELY FOR INFORMATIONAL PURPOSES

+U06587585+ 19

1632   1/12/2018   80958232/1

# EXHIBIT D

| | LOAN NUMBER | ACCT. NUMBER | NOTE DATE | NOTE AMOUNT | MATURITY DATE |
|---|---|---|---|---|---|
| **PRIOR OBLIGATION INFORMATION** | 1763142 | | 08/21/12 | $52,159.66 | 03/21/14 |

| | LOAN NUMBER | ACCT. NUMBER | MODIFICATION DATE | NOTE AMOUNT |
|---|---|---|---|---|
| **AMENDED OBLIGATION INFORMATION** | 1763143 | | March 20, 2014 | $52,259.66 |
| | **MATURITY DATE** | **INDEX (w/margin)** | **INTEREST RATE** | **INITIALS** |
| | 03/19/24 | Not Applicable | 6.500% | 300 FCT |
| | | | **Creditor Use Only** | |

## DOCUMENT 11
## DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is March 20, 2014. The parties and their addresses are:

**LENDER:**
MARION BANK AND TRUST COMPANY
601 WASHINGTON STREET
P O BOX 510
MARION, AL 36756
Telephone: (334) 683-6131

**BORROWER:**
DERRICK JACKSON
% CHRISTINE JACKSON, 505 EAST STREET
MARION, AL 36756

CHRISTINE JACKSON
505 EAST STREET
MARION, AL 36756

**1. DEFINITIONS.** In this Modification, these terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in the Modification or the Prior Obligation.

**B. Amended Obligation.** Amended Obligation is the resulting agreement that is created when the Modification amends the Prior Obligation. It is described above in the AMENDED OBLIGATION INFORMATION section.

**C. Loan.** Loan refers to this transaction generally. It includes the obligations and duties arising from the terms of all documents prepared or submitted in association with the Prior Obligation and this modification, such as applications, security agreements, disclosures, notes, agreements, and this Modification.

**D. Modification.** Modification refers to this Debt Modification Agreement.

**E. Prior Obligation.** Prior Obligation refers to my original agreement described above in the PRIOR OBLIGATION INFORMATION section, and any subsequent extensions, renewals, modifications or substitutions of it.

**2. BACKGROUND.** You and I have previously entered into a Prior Obligation. As of the date of this Modification, the outstanding, unpaid balance of the Prior Obligation is $54,288.08. Conditions have changed since the execution of the Prior Obligation instruments. In response, and for value received, you and I agree to modify the terms of the Prior Obligation, as provided for in this Modification.

**3. CONTINUATION OF TERMS.** I agree and understand that all other terms and provisions in the Prior Obligation survive and continue in full force and effect, except to the extent that they are specifically and expressly amended by this Modification. The express amendment of a term does not amend related or other terms - even if the related or other terms are contained in the same section or paragraph of the Prior Obligation. For illustration purposes only, a modification of the interest rate to be paid during the term of the loan would not modify the default rate of interest even though both of those terms are described in the Prior Obligation in a common section titled "Interest". The term "Prior Obligation" includes the original instrument and any modifications prior to this Modification.

**4. TERMS.** The Prior Obligation is modified as follows:

**A. Interest.** Our agreement for the payment of interest is modified to read:

(1) **INTEREST.** Interest will accrue on the unpaid Principal balance of the Loan at the rate of 6.500 percent (Interest Rate).

(a) **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of the Loan at the Interest Rate in effect from time to time, until paid in full.

**B. Maturity and Payments.** The maturity and payment provisions are modified to read:

(1) **PAYMENT.** I agree to pay the Loan in 120 payments. A payment of $595.92 will be due April 19, 2014, and on the 19th day of each month thereafter. A final payment of the entire unpaid balance of Principal and interest will be due March 19, 2024.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**C. Security.** The security provision is modified to read:

(1) **Existing Collateral Added.** The following previously executed security instruments or agreements are added as security for the Amended Obligation: SECURED BY REAL ESTATE MORTGAGE GIVEN BY THE UNDERSIGNED TO THE PAYEE OF NOTE DATED 04/27/2004, RECORDED IN BOOK 586, PAGE 356, AND MORTGAGE DATED 05/21/1999, RECORDED IN BOOK 560, PAGE 598, BOTH RECORDED IN THE PROBATE OFFICE OF PERRY COUNTY, AL. (CHRISTINE JACKSON'S HOME) .

**D. Fees and Charges.** As additional consideration for your consent to enter into this Modification, I agree to pay, or have paid these additional fees and charges:

(1) **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment or $10.00, whichever is greater. However, this charge will not be greater than $100.00. I will pay this late charge promptly but only once for each late payment.

**5. WAIVER.** I waive all claims, defenses, setoffs, or counterclaims relating to the Prior Obligation, or any document securing the Prior Obligation, that I may have. Any party to the Prior Obligation that does not sign this Modification, shall remain liable under the terms of the Prior Obligation unless released in writing by you.

**6. REASON(S) FOR MODIFICATION.** LOAN APPROACHING MATURITY/PERMANENT FINANCING

**7. SIGNATURES.** By signing under seal, I agree to the terms contained in this Modification. I also acknowledge receipt of a copy of this Modification.

DERRICK JACKSON
Debt Modification Agreement
AL/4LRAYFIEL00000000000674013N

Wolters Kluwer Financial Services ©1996, 2014 Bankers Systems™

Initials _____
Page 1

**BORROWER:**

_Derrick Jackson_ (Seal) by _Christine Jackson_ POA
DERRICK  JACKSON
Individually

_Christine Jackson_ (Seal)
CHRISTINE  JACKSON
Individually

**LENDER:**

MARION BANK AND TRUST COMPANY

DOCUMENT·11

By_____ (Seal)
F. Conrad·Taylor, President

DERRICK  JACKSON
Debt Modification Agreement
AL/4LRAYFIEL00000000000674013N

Wolters Kluwer Financial Services ©1996, 2014 Bankers Systems™

Initials _____
Page 6

The insurable value of this Property is _____. The term of coverage will be Term of Loan. The maximum deductible allowed is
_____.

**Effective Date:**

**INSURANCE COMPANY.** The insurance policy covering the Property and the insurance company issuing the policy are as follows:

**Policy Number.**

**Insurance Company Name, Address, and Phone Number.**

, AL

**INSURANCE AGENCY AND AGENT.** The insurance agency through which I have purchased, or intend to purchase, the required insurance is as follows:

**Agent Name.**

**Agency Name, Address, and Phone Number.**

, AL

DOCUMENT 11

DERRICK JACKSON
Loan Information Report
AL/4LRAYFIEL000000000000674013N

Wolters Kluwer Financial Services ®1996, 2014 Bankers Systems™

Initial
Page 3

# EXHIBIT E

# Consumer Note

| Lender | Borrower | Summary |
|---|---|---|
| MARION BANK AND TRUST COMPANY | CHRISTINE JACKSON | Loan Number: 186476 |
| 601 WASHINGTON STREET | 505 EAST STREET | Note Date: February 13, 2017 |
| P O BOX 510 | MARION, AL 36756 | Loan Amount: $64,895.88 |
| MARION, AL 36756 | | Maturity Date: April 13, 2022 |

## Definitions

*"I", "me"* or *"my"* means each Borrower or Cosigner who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as *"us"*). *"You"* or *"your"* means the Lender and its successors and assigns.

*"Property"* means all property securing this note.

*"Loan Documents"* means all the documents executed as a part of or in connection with the transaction.

## Existing Loan

**Refinancing.** This note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| 06/08/2015 | 185302 | $60,664.52 |
| 10/06/2016 | 186402 | $11,378.90 |
| 06/07/2016 | 186212 | $3,021.30 |

The remaining balance of the refinanced note(s) listed above is $35,427.88.

## Promise to Pay

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of sixty four thousand eight hundred ninety-five and 88/100 dollars ($64,895.88) under the terms of this Note.

**Single Advance.** I will receive all of the loan amount on February 17, 2017. There will be no additional advances under this note. However, you may add other amounts to the principal if you make any payments described in the *Payments by Lender* section below.

## Interest and Other Charges

I agree to pay interest on the outstanding principal balance from February 17, 2017 at the rate of 4.58% per year until paid in full.

Interest accrues on the principal remaining unpaid from time to time, until paid in full. The interest rate(s) and

other charges on this note will never exceed the highest rate or charge allowed by law for this note. If you collect more interest than the law and this note allow, you agree to refund it to me. If you send any erroneous notice of interest, you agree to correct it.

**Accrual Method.** The amount of interest that I will pay on this note will be calculated on a/an Actual/360 basis. For interest calculation, the accrual method will determine the number of days in a year.

**Post-Maturity Rate.** I agree to pay interest on the unpaid balance of this note owing after maturity on the same basis as before maturity.

**Late Charge.** If I make a payment more than 15 days after it is due, I agree to pay a late charge of 5.000 percent of the AMOUNT OF PAYMENT or $10.00, whichever is greater. However, this charge will not be greater than $100.00.

**Additional Charges.** The Loan Estimate and Closing Disclosure that were given to me list the fees and charges that apply to this loan.

## Assumption

This note and any document securing it cannot be assumed by someone buying the secured Property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the Property securing this note, I will be in default on this note. You may proceed against me under any due on sale clause in the security agreement, which is incorporated by reference.

## Payments

I agree to pay this note in 62 monthly payments. A payment of $1,178.55 will be due on March 13, 2017 and on the same day of each month until April 13, 2022. On that date, I agree to pay in full the principal balance and all accrued interest on this note.

**Rounding and Other Information.** Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the

Note-Consumer-AL
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014
2017020716.3.0.4007-J20161215Y
12/2016
Page 1 of 4

amount of any advances you have made to others on my behalf. Any payment falling due on a holiday or a day that is a non-business day for you, will be due on your next business day. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**Application of Payments.** Except as otherwise provided in this note, each payment I make on this note will be applied first to interest that is due, then to principal that is due, and finally to late charges that are due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will also depend on my payment record.

**Prepayment.** I may prepay this note in whole, or in part, at any time, without penalty. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

## Default and Remedies

**Default.** Subject to the terms of the *Real Estate or Residence Security* section, I will be in default if any of the following occurs:

1. Payments. I fail to make a payment as required by this note.
2. Property. My action or inaction adversely affects the Property or your rights in the Property.
3. Other Documents. A default occurs under the terms of any other Loan Document.

**Remedies.** If I am in default on this note you have, but are not limited to, the following remedies:

1. You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges);
2. You may set off this debt against any right I have to the payment of money from you, subject to the terms of the *Set-Off* section herein;
3. You may demand security, additional security, or additional parties to be obligated to pay this note,as a condition for not using any other remedy;
4. You may refuse to make advances to me; and
5. You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**Real Estate or Residence Security.** The existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the *Default* and *Remedies* sections of this note.

**Payments by Lender.** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**Collection Costs and Attorneys' Fees.** To the extent permitted by law, I agree to pay all costs of collection, replevin (an action for the recovery of property wrongfully taken or detained) or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any reasonable fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the *United States Bankruptcy Code*, I also agree to pay the reasonable attorneys' fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**Set-Off.** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

*"Right to receive money from you"* means:

1. Any deposit account balance I have with you;
2. Any money owed to me on an item presented to you or in your possession for collection or exchange; and
3. Any repurchase agreement or other nondeposit obligation.

*"Any amount due and payable under this note"* means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any individual retirement account or other tax-deferred retirement account.

You will not be liable for the dishonor (nonpayment) of any check when the dishonor occurs because you set off

Note-Consumer-AL
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014
2017020716.3.0.4007-J20161215Y
12/2016
Page 2 of 4

this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

## Security

This note is separately secured by:

Secured by Real Estate Mortgage dated 05/21/1999, recorded in book 560, page 598, also Real Estate Mortgage dated 04/27/2004 recorded in book 586, page 356, both recorded in the Probate Office of Perry County, Alabama

**Other Debts and Property.** Property securing another debt will not secure this note if such property is my principal dwelling and you fail to provide any required notice of right of rescission (i.e., right to cancel). Also, property securing another debt will not secure this note to the extent such property is household goods. No present or future agreement securing any other debt I owe you will secure the payment of this note if, with respect to this note, you fail to fulfill any necessary requirements or conform to any limitations of Regulations Z and X that are required for loans secured by the Property or if, as a result, this note would become subject to Section 670 of the *John Warner National Defense Authorization Act* for Fiscal Year 2007.

## Insurance

**Property Insurance.** I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay _____ for _____ of coverage.

**Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the Property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

## General Terms

This note is governed by the law of the state of Alabama, the United States of America, and to the extent required, by the law of the jurisdiction where the Property is located. Any term of this note which is contrary to the applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this note can not be enforced according to its terms, this fact will not affect the enforceability of the remainder of this note. No modification of this note or any agreement

securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this note.

**If Other Persons Owe on the Loan.** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may, without notice, release any party to this note without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all of us or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.)

**Extending the Note; Assigning my Obligation.** I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this note without your prior written approval.

**Giving up my Rights.** To the extent not prohibited by law, and except for any required notice or right to cure, I give up my rights to require you to:

1. Demand payment of amounts due (presentment);
2. Obtain official certification of nonpayment (protest);
3. Give notice that amounts due have not been paid (notice of dishonor).

I give up any rights that a guarantor would have to avoid paying the note (unless it has been fully paid). I also give up any rights to avoid paying based on any action you have taken regarding any mortgage or other collateral for the note. I give up any rights under this note only if the law allows me to.

To the extent permitted by law, I also waive all personal property exemptions in the Property securing this note.

**Financial Information.** I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**Purpose.** The purpose of this note is Consolidation and home repair.

## Notice

Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current

Note-Consumer-AL
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2017020716.3.0.4007-J20161215Y

12/2016
Page 3 of 4

address is in the *Date and Parties* section. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated in the *Date and Parties* section, or to any other address that you have designated.

## Signatures

By signing under seal, I agree to the terms contained in this note. I also acknowledge receipt of a copy of this note on today's date.
DOCUMENT 11

CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

**Borrower**

*Christine Jackson*                13 Apr 2017
CHRISTINE JACKSON                    Date
                                     Seal

Loan Origination Organization: MARJON BANK AND TRUST COMPANY

NMLS ID: 433895

Loan Originator: FRANCIS CONRAD TAYLOR

NMLS ID: 445275

# EXHIBIT F



## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**

505 East St
Lot#22 Cloverdale S/D
Marion, AL 36756

**FOR:**

Quicken Loans, Inc/VA
1050 Woodward Ave
Detroit, MI 48226

**AS OF:**

10/16/2017

**BY:**

Rachel K. King
Certified Residential Real Property Appraiser
R00997
Stone Bridge Appraisal Company
P.O. Box 84
Demopolis, Alabama 36732

Stone Bridge Appraisal Company
P.O. Box 84
Demopolis, Alabama 36732
334-341-9955

10/18/2017

Quicken Loans, Inc/VA
1050 Woodward Ave
Detroit, MI 48226

Re:  Property:      505 East St
                    Marion, AL 36756
     Borrower:      Christine C. Jackson
     File No.:      22-22-6-0713348

In accordance with your request, I have appraised the above referenced property and prepared a VA, UAD appraisal report.

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved in unencumbered fee simple interest ownership.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject. The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

It has been a pleasure to assist you.  Please do not hesitate to contact me, if I can be of additional service to you

Sincerely,

*Rachel K. King*

Rachel K. King
R00997
Certified Residential Real Property Appraiser

| Borrower | Christine C. Jackson | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | | | |
| City | Marion | | County | Perry | | State | AL | Zip Code 36756 |
| Lender | Quicken Loans, Inc/VA | | | | | | | |

This report was prepared under the following USPAP reporting option:

[X] Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(a).

[ ] Restricted Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(b).

**Reasonable Exposure Time**

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: _____

Exposure time is deemed to expire as of the effective date the appraisal - it examines the time frame leading up to the date of valuation, linking the value estimate to how long the subject property would have required exposure in order to sell at the estimated market value.

Marketing time is deemed to start at the effective date of the appraisal, looking forward in time. It is a prediction of how long a property would require exposure to a competitive and open market in order to find a buyer, under either typical or prescribed circumstances.

With regards to the above statements, the estimated reasonable exposure time for the subject would be 90-270 days.

**Additional Certifications**

I certify that, to the best of my knowledge and belief:

[X] I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

[ ] I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).
USPAP 2016-2017 Required Statement:
No services were performed by the appraiser within the 3 year period immediately preceding acceptance of this assignment, as an appraiser or in any capacity.

**Additional Comments**

"This assignment was made subject to regulations of the State of Alabama Real Estate Appraisers Board. The undersigned state licensed real estate appraiser has met the requirements of the board that allow this report to be regarded as a 'certified appraisal'."

| APPRAISER: | | SUPERVISORY APPRAISER: (only if required) | |
|---|---|---|---|
| Signature: | *Rachel K. King* | Signature: | |
| Name: | Rachel K. King | Name: | |
| Date Signed: | 10/18/2017 | Date Signed: | |
| State Certification #: | R00997 | State Certification #: | |
| or State License #: | | or State License #: | |
| State: | AL | State: | |
| Expiration Date of Certification or License: | 09/30/2019 | Expiration Date of Certification or License: | |
| Effective Date of Appraisal: | 10/16/2017 | Supervisory Appraiser Inspection of Subject Property: | |
| | | [ ] Did Not  [ ] Exterior-only from Street  [ ] Interior and Exterior | |

# Uniform Residential Appraisal Report

File # 22-22-6-07133-48

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

SUBJECT

| | | |
|---|---|---|
| Property Address 505 East St | City Marion | State AL Zip Code 36756 |
| Borrower Christine C. Jackson | Owner of Public Record Christine C. Jackson | County Perry |

Legal Description Lot#22 Cloverdale S/D

| | | |
|---|---|---|
| Assessor's Parcel # 53-14-03-07-4-003-020.000 | Tax Year 2016 | R.E. Taxes $ 381 |
| Neighborhood Name City of Marion Cloverdale S/D | Map Reference 7-19 N-8E | Census Tract 6870.00 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 0    ☐ PUD    HOA $ 0    ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe)

Lender/Client Quicken Loans, Inc./VA    Address 1050 Woodward Ave, Detroit, MI 48226

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). Homeowner

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

CONTRACT

Contract Price $    Date of Contract    Is the property seller the owner of public record? ☐ Yes ☐ No    Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

NEIGHBORHOOD

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | | Property Values | ☐ Increasing ☒ Stable ☐ Declining | | PRICE $ (000) | AGE (yrs) | One-Unit | 100 % |
| Built-Up | ☐ Over 75% ☒ 25-75% ☐ Under 25% | | Demand/Supply | ☐ Shortage ☒ In Balance ☐ Over Supply | | Low 33 | 0 | 2-4 Unit | % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time | ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | High 253 | 200 | Multi-Family | % |
| Neighborhood Boundaries | The subject boundaries are Centreville St-North, AL Hwy 183-South, AL Hwy 5-East, AL | | | | | Pred. 95 | 50 | Commercial | % |
| | Hwy14-West. | | | | | | | Other | % |

Neighborhood Description The economic base of the community and employment level of the area have been relatively stable. The appraiser did not observe any negative factors in this neighborhood that would adversely affect market appeal or reasonable marketability of the subject property. The neighborhood processes adequate residential support linkages (schools, shopping, medical, etc.)

Market Conditions (including support for the above conclusions) Market conditions and property values within the neighborhood are conducive to the environment of the surrounding area. Supply and demand factors are considered in balance. Relatively low interest rates and a modest economic recovery have created a relatively stable demand for single family dwellings.

SITE

| | | | |
|---|---|---|---|
| Dimensions 75x150x75x150 | Area 11250 s.f | Shape Rectangle | View N;Res; |

Specific Zoning Classification Residential    Zoning Description Residential

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone X    FEMA Map # 01105C0193E    FEMA Map Date 09/02/2011

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

IMPROVEMENTS

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | Block/Avg | Floors | L.hdwd/Vin/Cpet/A |
| # of Stories 1 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | Masonite/Avg | Walls | Drywall/WP/Avg |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | | Basement Area 0 sq.ft. | | Roof Surface | Shingle/Avg | Trim/Finish | Wood/Avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 0 % | | Gutters & Downspouts | Yes/Avg | Bath Floor | Tile/Avg |
| Design (Style) Ranch | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | SH/DG/Wood/Avg | Bath Wainscot | Tile/Avg |
| Year Built 1960 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | None | Car Storage ☐ None | |
| Effective Age (Yrs) 18 | | ☐ Dampness ☐ Settlement | | Screens | None | ☐ Driveway # of Cars 2 | |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | Woodstove(s) # 0 | Driveway Surface Concrete | |
| ☒ Drop Stair ☐ Stairs | | ☐ Other Fuel Electric | | ☐ Fireplace(s) # 0 ☒ Fence ChLk | | ☐ Garage # of Cars 0 | |
| ☐ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☒ Patio/Deck Deck ☒ Porch Ft.SIP | | ☐ Carport # of Cars 0 | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool None ☐ Other None | | ☐ Att. ☐ Det. ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 8 Rooms    3 Bedrooms    1.1 Bath(s)    2,287 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). ceiling fans

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). C4;No updates in the prior 15 years;The subject house is in average condition for a house of this age and design. I noticed no signs of excess physical depreciation at the time of the observation. I noticed no signs of external or functional depreciation at the time of the observation.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

# Uniform Residential Appraisal Report

File # 22-22-6-0713348

| There are | 14 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 33,000 to $ 195,000 |
| There are | 9 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 42,657 to $ 252,500 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 505 East St | 317 Erwin Woods St | | 1908 Cedar Dr | | 607 Moore St | |
| | Marion, AL 36756 | Greensboro, AL 36744 | | Greensboro, AL 36744 | | Marion, AL 36756 | |
| Proximity to Subject | | 17.46 miles W | | 17.81 miles W | | 0.24 miles E | |
| Sale Price | $ | | $ 95,000 | | $ 145,000 | | $ 120,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 42.79 sq.ft. | | $ 57.59 sq.ft. | | $ 61.26 sq.ft. | |
| Data Source(s) | | WAMLS#107104;DOM 250 | | Public Records;DOM Unk | | FlexMLS#14-119;DOM 750 | |
| Verification Source(s) | | Inspection | | Inspection | | Ext Inspection | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Cash;0 | | FHA;5300 | | Conv;0 | |
| Date of Sale/Time | | s04/17;c02/17 | | s07/17;c05/17 | | s04/17;c03/17 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 11250 sf | 1.50 ac | 0 | 21 106 sf | 0 | 30000 s f | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Ranch | DT1;Ranch | | DT1;Ranch | | DT1;Ranch | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 57 | ~57 | 0 | 74 | 0 | 57 | |
| Condition | C4 | C4 | | C4 | | C4 | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8 3 1.1 | 8 3 2.0 | -2,400 | 7 3 2.0 | -2,400 | 6 3 2.0 | -2,400 |
| Gross Living Area | 2,287 sq.ft. | 2,220 sq.ft. | +2,010 | 2,518 sq.ft. | -6,930 | 1,959 sq.ft. | +9,840 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 1217sf0sfwo | -6,085 |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Cent/Cent | Cent/Cent | | Cent/Cent | | Cent/Cent | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2dw | 2cp2dw | -1,500 | 2gr2dw | -1,500 | 2gb i2dw | -2,500 |
| Porch/Patio/Deck | Porch-SIP-Deck | Porches | 0 | Porch-Dock | 0 | Porches-Patio | 0 |
| Other | Fence | Fence | | Stg Rm | 0 | None | +1,000 |
| Net Adjustment (Total) | | + ☒ - | $ -1,890 | + ☒ - | $ -10,830 | + ☒ - | $ -145 |
| Adjusted Sale Price | | Net Adj. 2.0 % | | Net Adj. 7.5 % | | Net Adj. 0.1 % | |
| of Comparables | | Gross Adj. 6.2 % | $ 93,110 | Gross Adj. 7.5 % | $ 134,170 | Gross Adj. 18.2 % | $ 119,855 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) Public Records-Realtor-Appraiser or other Appraiser's file
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) Public Records-Realtor-Appraiser or other Appraiser's file
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Realtor/Tax Assessor | Realtor/Tax Assessor | Realtor/Tax Assessor | Realtor/Tax Assessor |
| Effective Date of Data Source(s) | 10/16/2017 | 10/16/2017 | 10/16/2017 | 10/16/2017 |

Analysis of prior sale or transfer history of the subject property and comparable sales
To the best of my knowledge, none of the comparables have sold in the past 36 months, except as noted in the above section. However, Alabama is a nondisclosure state, therefore sales and deed transfers are difficult to glean from county(public) records.

Summary of Sales Comparison Approach Measurements of the sales were not made by the appraiser, but I believe the data is accurate. The sales data has been verified from multiple sources when possible. I feel that once the appropriate adjustments have been made to the sales they yield a reasonable value estimate for the subject property. I believe that these are the best sales available at time of this appraisal.

Indicated Value by Sales Comparison Approach $ 114,000
Indicated Value by: Sales Comparison Approach $ 114,000   Cost Approach (if developed) $   Income Approach (if developed) $

I have considered the three traditional approaches to value. I have estimated the market value of the subject property using two of the three traditional approaches to value. I have considered the income approach, but I do not feel that it would be of any value in this appraisal situation. I have place the most emphasis on the sales comparison approach to value.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No repairs needed to meet VA/HUD MPS (minimum property standards).

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my opinion of the market value, as defined, of the real property that is the subject of this report is $ 114,000 , as of 10/16/2017 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Page 2 of 6          Fannie Mae Form 1004 March 2005

DOCUMENT 11

Case 2:25-cv-00813-TLN-MDB Document 3 Filed 06/06/25 Page 6 of 26

FHA/VA Case No. 22-22-6-0713348    Page # 6 of 26

Case 2:25-cv-00813-TLN-MDB Document 3 Filed 06/06/25 Page 7 of 107 Page ID #: 181

Uniform Residential Appraisal Report

File# 22-22-6-07133-48

**Additional Comments**

THIS REPORT IS PREPARED WITH NO MANUAL CORRECTIONS. SHOULD THE REPORT BE ALTERED BY ANYONE WITHOUT THE

WRITTEN PERMISSION OF THE PERSON OR PERSONS PREPARING THE REPORT, IT WILL BECOME INVALID. THE SUBJECT

WILL HAVE NO VALUE.

UNLESS NOTED IN THE APPRAISAL REPORT, INFESTATION WAS NOT FOUND. THE APPRAISER ACCEPTS NO RESPONSIBILITY

AS TO THE PRESENCE OR ABSENCE OF INFESTATION. AN INFESTATION INSPECTION BY A QUALIFIED INFESTATION

INSPECTOR IS RECOMMENDED IF INFESTATION IS SUSPECTED.

THE APPRAISER RESERVES THE RIGHT TO CORRECT OMISSIONS AND OR TYPOS THAT MAY OCCUR.

**Comment on Utilities**

The utilities were on appeared to be functioning at the time of the inspection.

**Comment on Head & Shoulder Inspection**

The appraiser performed both head and shoulder observation of crawl and attic.

The report is signed by means of a password protected digital signature.

*(left margin: ADDITIONAL COMMENTS)*

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | = $ |
|---|---|---|---|---|
| Source of cost data | DWELLING | Sq.Ft. @$ | | = $ |
| Quality rating from cost service          Effective date of cost data | | Sq.Ft. @$ | | = $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | = $ |
| R= 10/11/2017 | Garage/Carport | Sq.Ft. @$ | | = $ |
| A= 10/16/2017    (1st Available Access) | Total Estimate of Cost-New | | | = $ |
| M=10/18/2017 | Less          Physical | Functional | External | |
| | Depreciation | | | = $(          ) |
| | Depreciated Cost of Improvements | | | = $ |
| | "As-is" Value of Site Improvements | | | = $ |
| Estimated Remaining Economic Life (HUD and VA only)          42 Years | INDICATED VALUE BY COST APPROACH | | | = $ |

*(left margin: COST APPROACH)*

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| Estimated Monthly Market Rent $          X Gross Rent Multiplier          = $ | Indicated Value by Income Approach |
|---|---|
| Summary of Income Approach (including support for market rent and GRM) | Please see comment in supplemental addendum under the heading "Conditions of the Appraisal" |

*(left margin: INCOME)*

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?     ☐ Yes  ☐ No     Unit type(s)     ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases          Total number of units | Total number of units sold |
|---|---|
| Total number of units rented          Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?     ☐ Yes     ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?     ☐ Yes  ☐ No   Data Source

Are the units, common elements, and recreation facilities complete?     ☐ Yes     ☐ No   If No, describe the status of completion.

*(left margin: PUD INFORMATION)*

Are the common elements leased to or by the Homeowners' Association?     ☐ Yes     ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

## Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:    The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE:    The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:    The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:    The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**Uniform Residential Appraisal Report**

Re# 22-22-6-07133-48

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Uniform Residential Appraisal Report

File # 22-22-6-0713348

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | Rachel K. King | SUPERVISORY APPRAISER (ONLY IF REQUIRED) | |
|---|---|---|---|
| Signature | *Rachel C. King* | Signature | |
| Name | Rachel K. King | Name | |
| Company Name | Stone Bridge Appraisal Co., LLC | Company Name | |
| Company Address | P.O. Box 84 | Company Address | |
| | Demopolis, AL 36732 | | |
| Telephone Number | 334-341-9955 | Telephone Number | |
| Email Address | rking15@bellsouth.net | Email Address | |
| Date of Signature and Report | 10/18/2017 | Date of Signature | |
| Effective Date of Appraisal | 10/16/2017 | State Certification # | |
| State Certification # | R00997 | or State License # | |
| or State License # | | State | |
| or Other (describe) | State # | Expiration Date of Certification or License | |
| State | AL | | |
| Expiration Date of Certification or License | 09/30/2019 | SUBJECT PROPERTY | |

ADDRESS OF PROPERTY APPRAISED

50 S East St

Marion, AL 36756

APPRAISED VALUE OF SUBJECT PROPERTY $ 114,000

LENDER/CLIENT

Name No AMC

Company Name Quicken Loans, Inc/VA

Company Address 1050 Woodward Ave, Detroit, MI 48226

Email Address VAorders@tsiappraisal.com

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection
☐ Did inspect interior and exterior of subject property
Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

# Uniform Residential Appraisal Report

Re# 22-22-6-0713348

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 505 East St / Marion, AL 36756 | 104 E Lafayette St / Marion, AL 36756 | | | | | |
| Proximity to Subject | | 0.63 miles W | | | | | |
| Sale Price | $ | | $ 86,000 | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 55.16 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | Public Records;DOM 873 | | | | | |
| Verification Source(s) | | Ext Inspection | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | | | | |
| Concessions | | Conv;0 | | | | | |
| Date of Sale/Time | | s09/16;c08/16 | | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 11250 sf | 8000 sf | 0 | | | | |
| View | N;Res; | N;Res; | | | | | |
| Design (Style) | DT1;Ranch | DT1;Rambler | 0 | | | | |
| Quality of Construction | Q4 | Q4 | | | | | |
| Actual Age | 57 | 86 | 0 | | | | |
| Condition | C4 | C4 | | | | | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 8 / 3 / 1.1 | 6 / 3 / 1.1 | 0 | | | | |
| Gross Living Area | 2,287 sq.ft. | 1,559 sq.ft. | +21,840 | sq.ft. | | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | Cent/Cent | Cent/Cent | | | | | |
| Energy Efficient Items | None | None | | | | | |
| Garage/Carport | 2dw | 1cp1dw | -1,500 | | | | |
| Porch/Patio/Deck | Porch-SIP-Deck | Porch | 0 | | | | |
| Other | Fence | Fence/Stg Bldg | -1,000 | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 19,340 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 22.5 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 28.5 % | $ 105,340 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Realtor/Tax Assessor | Realtor/Tax Assessor | | |
| Effective Date of Data Source(s) | 10/16/2017 | 10/16/2017 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales    To the best of my knowledge, none of the comparables have sold in the past 36 months, except as noted in the above section. However, Alabama is a nondisclosure state, therefore sales and deed transfers are difficult to glean from county(public) records. There is no MLS for this market.

Analysis/Comments    None

Freddie Mac Form 70 March 2005 | UAD Version 9/2011 | Fannie Mae Form 1004 March 2005

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

**C1**

The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

**C2**

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

**C3**

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

**C4**

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

**C5**

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

**C6**

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Quality Ratings and Definitions

**Q1**

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Form UADDEFINE - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

### Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

### Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

### Definitions of Not Updated, Updated, and Remodeled

#### Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

#### Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

#### Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

Form UADDEFINE - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| Borrower | Christine C. Jackson | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | | | |
| City | Marion | County | Perry | | | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | | | |



### Subject Front/Side

505 East St

| | |
|---|---|
| Sales Price | |
| Gross Living Area | 2,287 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 11250 sf |
| Quality | Q4 |
| Age | 57 |



### Subject Rear/Side



### Subject Street

**Subject Photos**

| Borrower | Christine C. Jackson | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | |
| City | Marion | County | Perry | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | |



**Subject Front/Side**

505 East St
Sales Price
Gross Living Area    2,287
Total Rooms          8
Total Bedrooms       3
Total Bathrooms      1.1
Location             N;Res;
View                 N;Res;
Site                 11250 sf
Quality              Q4
Age                  57





**Subject Rear/Side**





**Subject Street**

| Borrower | Christine C. Jackson | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | |
| City | Marion | County | Perry | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | |


**DINING ROOM**


**NOOK**


**KITCHEN VIEW 1**


**KITCHEN VIEW 2**


**SUNROOM**


**LAUNDRY**


**DEN**


**LIVING ROOM**


**BATHROOM VIEW 1**


**BATHROOM VIEW 2**


**BATHROOM VIEW2**


**BATHROOM**


**BEDROOM**


**BEDROOM**


**BEDROOM**

**Photograph Addendum**

| Borrower | Christine C. Jackson | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | |
| City | Marion | County | Perry | State | AL | |
| Lender/Client | Quicken Loans, Inc/VA | | | Zip Code | 36756 | |

FHA-VA Case No. 22-22-6-0713348    Page # 17 of 26



**ATTIC VIEW 1**



**ATTIC VIEW 2**



**SCREEN IN PORCH**



**REAR OF SUBJECT**



**CRAWL SPACE**



**Comparable Photos 4-3**

| Borrower | Christine C. Jackson | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | | |
| City | Marion | County | Perry | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | | |



## Comparable 1

| | |
|---|---|
| 317 Erwin Woods St | |
| Prox. to Subject | 17.46 miles W |
| Sales Price | 95,000 |
| Gross Living Area | 2,220 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1.50 ac |
| Quality | Q4 |
| Age | ~57 |



## Comparable 2

| | |
|---|---|
| 1908 Cedar Dr | |
| Prox. to Subject | 17.81 miles W |
| Sales Price | 145,000 |
| Gross Living Area | 2,518 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 21106 sf |
| Quality | Q4 |
| Age | 74 |



## Comparable 3

| | |
|---|---|
| 607 Moore St | |
| Prox. to Subject | 0.24 miles E |
| Sales Price | 120,000 |
| Gross Living Area | 1,959 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 30000 sf |
| Quality | Q4 |
| Age | 57 |

**Comparable Photo Page**

| Borrower | Christine C. Jackson | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | |
| City | Marion | County | Perry | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | |



### Comparable 4

104 E Lafayette St
| | |
|---|---|
| Prox. to Subject | 0.63 miles W |
| Sale Price | 86,000 |
| Gross Living Area | 1,559 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 8000 sf |
| Quality | Q4 |
| Age | 86 |

### Comparable 5

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

**Market Conditions Addendum to the Appraisal Report**

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| | | | |
|---|---|---|---|
| Property Address | 505 East St | City Marion | State AL | ZIP Code 36756 |

Borrower    Christine C. Jackson

**Instructions:**  The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 6 | 2 | 1 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 1.00 | 0.67 | 0.33 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 5 | 10 | 13 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 5.0 | 14.9 | 39.4 | ☐ Declining | ☒ Stable | ☐ Increasing |
| **Median Sale & List Price, DOM, Sale/List %** | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 75,000 | 72,760 | 252,500 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 740 | 625 | 67 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | 95,000 | 89,000 | 89,999 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 294 | 158 | 121 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 100 | 81 | 92 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller–(developer, builder, etc.)paid financial assistance prevalent? | | ☒ Yes | ☐ No | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).      The tend is consist and stable.

Are foreclosure sales (REO sales) a factor in the market?   ☐ Yes   ☒ No   If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.      West Alabama MLS and Flex MLS, report ran for the zip code of the subject property.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.

See addendum

**If the subject is a unit in a condominium or cooperative project, complete the following:**    Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?   ☐ Yes   ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| | | | |
|---|---|---|---|
| Signature | *Rachel K. King* | Signature | |
| Appraiser Name | Rachel K. King | Supervisory Appraiser Name | |
| Company Name | Stone Bridge Appraisal Co., LLC | Company Name | |
| Company Address | P.O. Box 84, Demopolis, AL 36732 | Company Address | |
| State License/Certification # | R00997   State AL | State License/Certification # | State |
| Email Address | rking15@bellsouth.net | Email Address | |

## Supplemental Addendum

File No. 22-22-6-07133-48

| Borrower | Christine C. Jackson | | | | | | |
|----------|---------------------|---|-------|---|----|---------|-------|
| Property Address | 505 East St | | | | | | |
| City | Marion | County | Perry | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | | |

URAR: Intended User

This appraisal was ordered by and will be delivered to Quicken Loans Inc/VA in Detroit, MI. The intended use of this appraisal report is for Quicken Loans Inc/VA.

URAR: Intended Use

This appraisal will be used in a mortgage transaction and the use of the appraisal is to support VA's/HUD's decision to provide mortgage insurance on the real property that is the subject of the appraisal.

The intended use of the appraisal is solely to assist VA in assessing the risk of the property securing the VA-insured mortgage. VA and the Mortgagee are the intended users of the appraisal report. The VA appraiser does not guarantee that the property is free from defects. The appraisal establishes the value of the property for mortgage insurance purposes only.

VA appraisals are no guarantee that the property is free from defects. The appraisal only establishes the value of the property for mortgage insurance purposes. Buyers need to secure their own home inspections through the services of a qualified inspector and satisfy themselves about the condition of the property.

URAR: Condition of the Subject Property

The subject appears to meet VA/HUD standards and guidelines for safety, security and soundness.

URAR: Required Statement

"An observation of the subject property was completed on 10/16/2017 in accordance with the requirements of HUD 4000.1. Any deficiencies are noted in the appropriate section of the appraisal report. The subject property meets the Minimum Property Standards as defined by HUD Manual 4000.1".

Comment on Appliances

Refrigerator is consider personal property; however it appeared to but working order as of effective date of this assignment. Stove & Hood all appear to be in working order as of effective date of this assignment.

USPAP 2016-2017 Required Statement:

No services were performed by the appraiser within the 3 year period immediately preceding acceptance of this assignment, as an appraiser or in any capacity.

URAR: Comments on the Sales Comparison Approach

All of the sales were taken form the competitive market with the subject property. I have used the best and most appropriate sales available in this appraisal assignment. Once the appropriate adjustments have been made I believe they yield a reasonable value estimate for the subject property.

URAR: Conditions of the Appraisal

The income approach to value was considered but excluded due to the prevalence of owner occupancy. "This assignment was made subject to regulations of the State of Alabama Real Estate Appraisers Board. The undersigned state licensed real estate appraiser has met the requirements of the board that allow this report to be regarded as a 'certified appraisal'."

URAR: Adverse Environmental Conditions

A phase I environmental inspection was not provided to this appraiser. The appraiser is not an expert in the identification of hazardous substances of detrimental environmental conditions. My routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant conditions of the subject property or within the immediate area which would have a negative effect on the value.

URAR: Age of the Improvements

An exact age of the subject improvements is indicated in the public records of the County. The actual age given in this report is an estimate based upon a physical inspection of the subject property and county records. The appraiser defers to the age stated in county records

URAR: Legal Description & Site Size

I have rendered this opinion of value without the benefit of a current survey. For purposes of this appraisal I have assumed that the public records are correct regarding the size of the subject tract.

URAR: Dampness, Infestation, Settlement

I am not a structural engineer or a pest control expert. I am not qualified to examine the subject property foundation for settlement, dampness, or pest infestation.I f these are issues of concern a qualified professional in the field should be consulted.

URAR: Signature Addendum

The signatures in this report were entered electronically, are the actual signatures of the appraisers, and were not altered in any way.

URAR: Scope of the Appraisal

The scope of the appraisal includes the necessary research and analysis to prepare an appraisal report that meets the requirements for its intended use, according to the Uniform Standards of Professional Appraisal Practice

URAR: Appraiser's Statement

I certify to the best of my knowledge and belief that the statements of fact contained in this report are true and correct. The reported analysis, opinions, and conclusions are limited only by the reported assumptions and limited conditions, and are my personal, unbiased, professional analysis, opinions, and conclusions.

## Supplemental Addendum

File No. 22-22-6-07133-48

| Borrower | Christine C. Jackson | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | | |
| City | Marion | County | Perry | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | | |

URAR: Lot Value
Lot value is based on value not size. A lot can be larger than another but not worth as much, so the adjustment of the lack of an adjustment is based on value not size.

URAR: Source for Definition of Market Value
1. The buyer and seller are typically motivated.
2. Both parties are well in formed or well advised and each is acting in what they consider their best interest.
3. A reasonable time is allowed for exposure in the open market.
4. Payment is made in terms of cash in United States Dollars or in terms of a financial arrangement comparable thereto.
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions.
The source for the above information, definition of market value is obtained in HUD Handbook 4000.1.

Required Statement:
This appraiser completed this assignment with no influence on value (written or verbal) from any party connected with this assignment as referenced in the signed certification located on page 5 of the URAR (Items 16 and 18).

Required Statement:
Home Valuation Code of Conduct"The appraiser has prepared this appraisal in full compliance with the Home Valuation Code of Conduct and has not performed participated in, or been associated with any activity in violation of the Code"

Comment on Comparable Sales
The most recent sales were used in this assignment and are a result of a search of FlexMLS and WAMLS, public records, relationship with other agents and appraiser. The comparables search for this property was extended 12-15 months up to 20 miles in distance, though this may seem atypically it is not, in fact it is considered normal by agents, appraisers and property owners.

Comment on Reconciliation
All comparables used are helpful in this assignment to establish market value for the subject property. Each was used for various reasons and all were given some degree of weight. The highest and best use is residential in my opinion, it is in a residential setting and also zoned residential.
Marion is a small real estate market, sales at most any given time are limited and for this reason the comp search was extended into the surrounding areas. Comp #1 was used to bracket site size, bathroom count, GLA and car storage. Comp #2 was used to bracket site size, age, bathroom count, GLA and car storage. Comp #3 was used to bracket site size, bathroom count and car storage. Comp #4 was used to bracket unadjusted market value and same bathroom count. This comp also represents the lower end of the value range for this assignment. The most weight has been applied to the Marion comps.

Comment on Location Adjustments
Adjustments is not warranted in my opinion, there is not enough data to make this kind of adjustment, in this small of a market comparables in and around the subject surrounding area would be consider equal by typical buyer.

Comment on View
All views are consider equal and no adjustment is warranted.

Comment on Condition Adjustment
Adjustment not warranted. Lender requested this assignment to be in UAD format, the comparable chosen were classified by the new UAD standard, if not in UAD standard all comparables would be consider average. In a market as small as this one is, there is not enough data to make condition adjustment for difference in labeling between a C2, C3 and C4, etc., but to make an adjustment for the sole reason of labeling and without proven market data to back up the adjustment could be misleading and for this reason it is my opinion one is not warranted.

Comment on Quality Adjustment
Adjustment not warranted. Lender requested this assignment to be in UAD format, the comparable chosen were classified by the new UAD standard, if not in UAD standard all comparables would be consider average. In a market as small as this one is, there is not enough data to make quality adjustment for difference in labeling between a Q2, Q3 and Q4, etc., but to make an adjustment for the sole reason of labeling and without proven market data to back up the adjustment could be misleading and for this reason it is my opinion one is not warranted.

Comment on Effective Age
If an effective age adjustment is made in this assignment, it has been configured base on .5% of sales price, times number of years difference in effective age.

Comment on Inspection Date
Inspection date is always effective date unless otherwise noted in the report.

General Comment
The appraiser is not responsible for use of this report by any user not named or stated as an intended user by the client at the time of the engagement. USPAP Statement 9 states that while law may require a copy of this appraisal to be give to the borrower or other parties, those parties do not become intended users unless named or stated and agreed upon by the client and appraiser. The owner or borrower is not an intended user of this report. The appraiser does not warrant, guarantee, or make any representation as to the structural stability or condition of any heating, air conditioning, kitchen equipment, plumbing, electrical, etc. Therefore, it is assumed the dwelling is structurally sound and that all equipment is in working order unless deficiencies are

## Supplemental Addendum

| Borrower | Christine C. Jackson | | | | | |
|----------|---------------------|--------|-------|-------|--------|-------|
| Property Address | 505 East St | | | | | |
| City | Marion | County | Perry | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | |

clearly visible and so stated in this appraisal report. Should any party in this transaction question the physical condition of the subject property or any of its components, a qualified professional in it field should be consulted.

General Comment
This report is not for ad valorem tax, divorce, insurance purpose or any other reason(s) not stated in above intended use.

Comment on Home Inspection
The appraiser is NOT a home inspector and one should not be confused by the duties performed by a home inspector with that of the duties performed by an appraiser.  As an appraiser I recommend all buyer have a home inspection done by a qualified professional in that field.

Required Statement
I have considered relevant competitive listings and/or contract offerings in the performance of this appraisal.

FHA-VA Case No. 22-22-6-0713348    Page # 24 of 26

**Location Map**

| Borrower | Christine C. Jackson | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | | |
| City | Marion | County | Perry | | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | | |



| Borrower | Christine C. Jackson | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 505 East St | | | | | | |
| City | Marion | County | Perry | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | | | |



## Building Sketch

| Borrower | Christine C. Jackson | | | | |
|---|---|---|---|---|---|
| Property Address | 505 East St | | | | |
| City | Marion | County | Perry | State | AL | Zip Code | 36756 |
| Lender/Client | Quicken Loans, Inc/VA | | | | |



| Area Calculations Summary | | |
|---|---|---|
| **Living Area** | | **Calculation Details** |
| First Floor | 2286.76 Sq ft | 52.3 × 26.3 = 1375.49 |
| | | 16 × 16    =    256 |
| | | 25.3 × 25.9 =  655.27 |
| Screened Porch | -158.4 Sq ft | 9.9 × 16  =  158.4 |
| **Total Living Area (Rounded):** | **2287 Sq ft** | |
| **Non-living Area** | | |
| Open Porch | 105.2 Sq ft | 4 × 26.3  =  105.2 |
| Concrete Patio | 176 Sq ft | 16 × 11  =  176 |
| Wood Deck | 348 Sq ft | 24 × 14.5 =  348 |

TOTAL Sketch by a la mode, inc.

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTINE JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **QUICKEN LOANS, INC.,** | ) | |
| **MORTGAGE ELECTRONIC** | ) | **CASE NO:** |
| **SYSTEMS, INC., ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | **Formerly CV-2020-900018.00** |
| | ) | **In the Circuit Court of Perry** |
| | ) | **County, Alabama** |
| | ) | |
| | ) | |

## <u>AFFIDAVIT OF GINNY WILLCOX LEAVENS</u>

Before me, the undersigned notary public, in and for said county and said state, personally appeared Ginny Willcox Leavens, who, being by me first duly sworn, deposes and says as follows:

1.   My name is Ginny Willcox Leavens, and I am an attorney at the law firm of Balch & Bingham LLP. I am over the age of 19 years, and I submit this affidavit in support of Quicken Loans Inc.'s and Mortgage Electronic Registration Systems, Inc.'s Notice of Removal in the above-styled case, with full authority, based upon my personal knowledge.

2.   On June 8, 2020 I went on the Perry County Alabama Public GIS website and searched for real property records.

9035535.1

3.     I researched the current tax assessed value for property located at 505 East Street, Marion, Alabama 36756 (the "Property").

4.     I pulled the 2019 Property Record Card for the Property, a true and correct copy of which is attached as **Exhibit B-1**. That document reflects that the 2019 tax assessed value of the Property is $126,100.00.

_____
GINNY WILLCOX LEAVENS

SWORN TO AND SUBSCRIBED before me on this ⟶10 day of June 10, 2020.

_____
NOTARY PUBLIC
My Commission Expires: **MY COMMISSION EXPIRES: 10/27/2023**

2

# Exhibit G-1

6/8/2020 Perry County AL

## Property Record Card

Print Close



EAST STREET

### Parcel Info

| Parcel Number | | | Account # | Exempt | | AMENTITES X |
|---|---|---|---|---|---|---|
| 1403074003020000 | | | 3490 | N | | ROAD X |
| Subdivision | 009999-N/A | | | | | TOPO X |
| | | | | | | ELEC X |
| Neighborhood | -- | | | | | WATER X |
| | | | | | | GAS X |

| District | City | S-T-R | Acreage | Lot Size | Deed B/P |
|---|---|---|---|---|---|
| 03 | 03 | 07-19N-08E | 0 | 0 X 0 | B-000598 P-000404 D-04/16/2006 |
| Legal | | 75'X 150'LOT 22 CLOVERDALE SUB DIV DB 505 PG 571DB 537 PG 623/ DB 555 PG 741 DB 595 PG 325 DB 598 PG 404 | | | |

### Owner

| Name | JACKSON CHRISTINE | | |
|---|---|---|---|
| Mailing Addr | 505 EAST ST MARION, AL 36756 | Physical Addr | 0 EAST ST |

### Values

| Land Total: | $3,000.00 |
|---|---|
| Building Total: | $123,100.00 |
| Appraised Value: | $126,100.00 |
| Yrly Tax: | $591.86 for 2019 |

### Building

| | Bldg No | Use Type | Yr Built | Base Area | Upper Area | Story | Appr Value |
|---|---|---|---|---|---|---|---|
| Detail | 1 | 0111 | 1960 | 2258 | 0 | 1 | $123,100.00 |

# Exhibit H

This instrument Was Prepared By

Name of Party    Robert H. Turner

Address     P.O. Box 929

Marion, Alabama 36756

THE STATE OF ALABAMA

Perry   County

THIS INDENTURE, made and entered into this the _21st_ day of _May_, 19_99_, by and between _Christine Jackson_, hereinafter called the first party, and **MARION BANK & TRUST COMPANY**, a corporation, **Marion, Alabama**, hereinafter called second party.

WITNESSETH: That, whereas, _Christine Jackson_ _____ of the first party, _is_ justly and lawfully indebted to the second party in the sum of _sixty thousand ($60,000.00)_ DOLLARS, being money this day loaned by second party to _christine Jackson_ of the first part, which said indebtedness is evidenced by the following promissory waive notes signed by _Christine Jackson_ of the first part, of even date herewith, and payable to the order of second party at its principal place of business in Marion, Alabama, in the amounts and payable on the dates following:

**Principal amount sixty thousand ($60,000.00) dollars and interest is repayable in fifty-nine (59) monthly installments of five hundred seventy three and 63/100 ($573.63) dollars; and one, the last payment at forty seven thousand, eight hundred seventy three and 09/100 ($47,873.09) dollars, with the first payment due thirty (30) days from the date of closing.**

STATE OF ALABAMA ≈ PERRY COUNTY ≈ I certify this Instrument was filed in my office for record on the _24_ day of _MAY_, 19_99_ at _12.15_ o'clock _P_ M. and record d in book _560_ Page _____ Priv. Tax _90.00_ Recording _8.50_

Donald R. Cook, Judge of Probate

'99 MAY 24 PM 12 15

DONALD R. COOK
JUDGE OF PROBATE

CERTIFY THIS INSTRUMENT
WAS FILED ON:

And whereas the first party is desirous of securing the prompt and faithful payment of said note(s) when due, as well as securing the prompt and faithful payment of any and all renewals and extensions of said notes and to secure any and all future advances that the second party may advance to the first party, before the payment in full of said mortgage indebtedness, and of securing the prompt and faithful performance of all and singular the convenants and agreements herein contained, by the first part to be kept and performed.

NOW THEREFORE, in consideration of the premises and of the sum of One Dollar, cash, in hand paid to first party by the second party, the receipt whereof is hereby acknowledged, first party does by this Indenture grant, bargain, sell and convey unto second party the following property, situated, lying and being in _Perry_ County, Alabama, bounded and more particularly described as follows:

**LOT NO. 22, ACCORDING TO THE PLAT OF THE CLOVERDALE SUBDIVISION, RECORDED IN THE PROBATE OFFICE OF PERRY COUNTY, ALABAMA, IN BOOK 361 AT PAGE 9, AND BEING THE SAME PROPERTY CONVEYED BY E. J. BLACKBURN AND WIFE, ELIZABETH A. BLACKBURN TO JOSEPH R. PEARCE BY DEED DATED JULY 27, 1964, AND RECORDED IN THE PROBATE OFFICE OF PERRY COUNTY, ALABAMA, IN BOOK 409, PAGE 143, REFERENCE TO WHICH DEED IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY HEREBY CONVEYED. IT IS ALSO THE SAME PROPERTY CONVEYED BY JOSEPH R. PEARCE AND WIFE, HARRIET H. PEARCE TO MARTHA G. PATTILLO BY DEED DATED JULY 21, 1969, AND RECORDED IN THE PROBATE OFFICE OF PERRY COUNTY, ALABAMA IN BOOK 434, PAGE 30.**

560

598

JODE 560
PAGE 599

## DOCUMENT 11

TO HAVE AND TO HOLD the above described property, together with all and singular the rights, privileges, tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, unto second party, and to the heirs, assigns, and successors of second party, in fee simple forever.

And the said first party represents to and covenants with second party that first party is seized of an indefeasible estate in fee simple, in and to the above described property, and has a good right to sell or mortgage the same; that the said property is free of any and all liens, taxes and encumbrances whatsoever; and that first party will warrant and forever defend second party, and the heirs, assigns and successors of second party, in the quiet and peaceable possession of the same against the lawful claims or demands of any person or persons, whomsoever.

THIS CONVEYANCE IS MADE UPON THE FOLLOWING TERMS, STIPULATIONS AND CONDITIONS, NAMELY:

1. The first party agrees to pay all taxes and improvement assessments against the above described property within thirty days after the same become due, and an attorney's fee for examining the title to the above described property and for the preparation of this mortgage.

2. If an attorney is employed to foreclose this mortgage, or to enforce any of the provisions of this mortgage, either before or after court proceedings are commenced involving this property, or to collect this debt or any part thereof; for the purpose of defending the title to the above described property, or to obtain possession of the same after foreclosure; then, in either or all of such events, first party agrees to pay such reasonable attorney's fees, as may be incurred by second party, or the assigns or successors of second party, for such services, and the amount of such attorney's fees shall become a part of this mortgage debt and be secured hereby, and these provisions shall apply to any proceeding in any state, bankruptcy or other court, as well as under the power of sale hereinafter set forth.

3. It is expressly understood and agreed between the parties hereto, that second party, or the heirs, assigns, or successors of second party, may bid at any sale held under the provisions of this mortgage, through court proceedings or otherwise, as fully and legally as if strangers to this instrument, and in the event of such purchase, the auctioneer crying the sale is hereby duly authorized and empowered to a deed to such purchaser conveying the legal and equitable title to said property, such deed to be made as agent or attorney in fact for first party.

4. The first party agrees to keep the building on the above described property insured in some responsible insurance company, for the amount of the principal debt hereby secured, or in such amount, if less, as the said buildings will bear with loss, if any, payable to second party, as the interest of second party, or assigns, may appear, under a New York Standard or Union loss clause, the insurance when collected to be credited on the debt hereby secured or to be used in rebuilding the buildings destroyed, at the option of the second party; all policies to be delivered to the second party.

5. It is expressly understood and agreed between the parties hereto, that if first party shall fail to pay the taxes or improvement assessments as above provided, or fail to take out the insurance as above stipulated, then in either event it is optional with second party to pay such taxes and take out such insurance, and the amounts so expended by second party shall become a part of this mortgage debt and bear interest at the legal rate until paid.

6. This mortgage, in addition to the above described note(s), shall also secure the payment of any and all renewals and/or extensions of said note(s) and of any future advances hereafter made by second party to first party or other debts which may be due, owing or payable by first party, or either of them, to second party before the cancellation or foreclosure of this mortgage.

7. The first party agrees to properly care for said property and all improvements thereon and not commit waste, cut, remove, or damage timber or improvements or allow waste to be committed or timber or improvements to be cut, removed, or damaged. In the event this covenant is breached, first party agrees to pay all costs and expenses, including reasonable attorney's fees, incurred by second party in investigating such violation and in protecting and preserving this security.

8. It is agreed and understood that in the event the said first party should sell said property during the life of this mortgage, without first obtaining the written consent of the second party, the entire indebtedness then secured by this mortgage shall become immediately due and payable and in default, and the said second party is thereupon authorized and empowered to foreclose this mortgage under the powers contained herein and in the manner herein provided for.

9. Unless otherwise stipulated herein, the use of the singular shall include the plural and the use of the plural shall include the singular, when referring to any of the parties set out in this mortgage.

If first party shall well and truly keep and perform all of the covenants, stipulations and agreements herein contained, by first party to be kept and performed, and shall pay the above described notes, any and all renewals and/or extensions of said notes and all future advances and other debts owing by first party to second party when they respectfully mature, then this conveyance shall be null and void; but if first party shall fail to keep and perform any one of such covenants, stipulations and conditions or fail to pay anyone of the above described notes, or of any renewal and/or extensions of said notes or any part thereof or any future advances or other debt due and payable by first party to second party, when the same respectively mature, then in either one or all of such events, second party has the right to declare the entire mortgage debt due and payable at once, and this mortgage shall be subject to foreclosure; and second party, or the assigns, agents or attorneys of second party are authorized and empowered to take possession of the above described property, and, either with or without possession, to sell the above described property at public auction to the highest bidder for cash, within the legal hours or sale, after first giving notice of the time, place and terms of sale, such sale to be held in front of the Courthouse ___Washington Street___

___Marion___ DOCUMENT ___Perry___ County, Alabama; which notice shall be given by weekly insertion, once a week for three weeks before the day of sale, in any newspaper published in the county last named, and the proceeds of such sale shall be applied as follows:

a. To the expense of advertising and conducting said sale, including a reasonable attorney's fee for any of the services rendered as herein above provided:

b. To the payment of any debt other than the notes above described which may then be due or owing to second party by first party, with interest to the day of sale;

c. To the payment of the above described notes or any renewals and/or extensions of said notes and any future advances with the interest thereon to the day of sale;

d. The surplus, if any, shall be paid to first party.

It is expressly understood and agreed between the parties hereto that any irregularity in giving the notice, or in conducting the sale as above provided, shall not affect the title of the purchaser at such sale, but any such irregularity is hereby expressly waived by the first party.

IN WITNESS WHEREOF, the first part signs and seals this instrument on the day and in the year first herein above written.

Witness:

_____ _Christine Jackson_ (Seal)
Christine Jackson

_____ _____ (Seal)

_____ _____ (Seal)

_____ _____ (Seal)

---

THE STATE OF ALABAMA ___Perry___ County

I, ___Sandra Bozer___, a Notary Public in and for said County, in said State, do hereby certify that ___Christine Jackson___ whose name ___is___ signed to the foregoing conveyance, and who ___is___ known to me, acknowledged before me on this day that, being informed of the contents of the conveyance ___she___ executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___21 st___ day of ___May___, 19 __1999__

___Sarah B. Bozer___

MY COMMISSION EXPIRES JANUARY 28, 2000

NOTARY PUBLIC _____

---

THE STATE OF ALABAMA _____ County

I, _____, a Notary public in and for said County, in said State, do hereby certify that _____ whose name _____ signed to the foregoing conveyance, and who _____ known to me, acknowledged before me on this day that, being informed of the contents of the conveyance _____ executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of _____, 19 _____

_____

NOTARY PUBLIC _____

DEED 5 60

PAGE 6 00

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Christine Jackson | Quicken Loans Inc.<br>Mortgage Electronic Registration Systems, Inc. |

| (b) County of Residence of First Listed Plaintiff    Perry County | County of Residence of First Listed Defendant    Wayne County |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* G. Lane Knight and Ginny Willcox Leavens |
|---|---|
| Robert H. Turner, Turner & Turner<br>P.O. Box 929<br>Marion, AL 36756 | Balch & Bingham, LLP<br>P.O. Box 78 Montgomery, AL 36101 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 485 Telephone Consumer Protection Act |
| | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☒ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Plaintiff challenges validity of mortgages on the property

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE      DOCKET NUMBER

DATE   6/10/20    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE